THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ROBERT HARMS, Appellant.

Argued October 5, 1954; decided December 3, 1954.

*Samuel Safronoff* and *Herbert H. Kunmann* for appellant. I. The Legislature seeks to regulate rather than prohibit the operation of motor vehicles by junior operators. II. The right of a junior operator to drive '' to and from school '', as used in section 20 (subd. 1, par. b.) of the Vehicle and Traffic Law, includes the right to operate to and from any function sponsored by, supervised and held on the school premises. (*Village of East Hampton* v. *Mulford,* 188 Misc. 1037; *Mount Herman Boys School* v. *Town of Gill,* 145 Mass. 139; *People* v. *Gillette,* 172 Misc. 847.) III. The definition of '' school '', as printed on junior operators' licenses issued subsequent to that issued to defendant-appellant, is not binding in this case. IV. Acts otherwise innocent and lawful do not become crimes unless there is a clear and positive intent to make them criminal. (*People* v. *Phyfe,* 136 N. Y. 554; *People* v. *Shifrin,* 301 N. Y. 445; *People* v. *Wallace & Co.,* 282 N. Y. 417; *People* v. *Adamkiewicz,* 298 N. Y. 176; *Winters* v. *New York,* 333 U. S. 507.)

*Frank A. Gulotta, District Attorney* (*Edward Margolin* of counsel), for respondent. I. The legislative concern with safety on the highways is the controlling standard for interpretation of the statute. II. Any construction of section 20 (subd. 1, par. b) of the Vehicle and Traffic Law which would have the effect of extending a junior operator's right to drive is contrary to legislative intent. (*People* v. *Gillette,* 172 Misc. 847; *Matter of Weisse* v. *Board of Educ. of City of N. Y.,* 178 Misc. 118; *Village of East Hampton* v. *Mulford,* 188 Misc. 1037.) III. School does not include extracurricular activities. (*Matter of McMaster* v. *Owens,* 193 Misc. 284, 275 App. Div. 506; *City of New York* v. *New York City Ry. Co.,* 193 N. Y. 543.) IV. Acts which are mala prohibita are punishable regardless of intent.

DESMOND, J. Defendant appeals from an affirmance of his conviction of the misdemeanor (see Vehicle and Traffic Law, § 70, subd. 1) of violating paragraph b of subdivision 1 of section 20 of the Vehicle and Traffic Law. The charge was that, on December 11, 1953, defendant, while under eighteen years of age and being the holder of a '' junior operator's '' license

only, and not being accompanied by a senior (over eighteen) licensed operator, operated an automobile at 10:30 o'clock at night.

At the trial the facts were stipulated thus: "The defendant, who is sixteen years of age and the holder of a junior operator's license, operated his motor vehicle during the hours of darkness, to wit: 10:30 P.M., unaccompanied by a duly licensed operator over the age of eighteen years. The defendant is a high school student and was operating his motor vehicle from Woodmere High School to his home. He had attended an interscholastic basketball game in which his school had participated. * * * high schools solicit their students to purchase tickets to attend their high school basketball games." The statute (Vehicle and Traffic Law, § 20, subd. 1, par. b) reads thus: "No operator's or chauffeur's license shall be issued to any person under eighteen years of age, except that junior operators' licenses may be issued to minors who have arrived at the age of sixteen years, but who have not reached eighteen years of age, under rules and regulations to be established by the commissioner, provided, however, that such license shall not entitle a licensee to operate a motor vehicle, other than *going to and from school,* during the hours of darkness unless accompanied by a duly licensed operator who is over eighteen years of age ". (Italics supplied.)

The question in the case is as to whether the courts below were correct when they construed the Legislature's phrase "going to and from school" as licensing the use of an automobile, by such a driver, on trips to and from the formal sessions of the educational institution only, and not including extracurricular activities. We agree with the courts below.

The word "school" has a number of different shades of meaning (Webster's Collegiate Dictionary [5th ed.], p. 889). But when "school" is used without the preceding article in a phrase like "going to school" it means, according to the lexicographers, as well as the usage of the "man in the street", a school session (Oxford Dictionary, Vol. 8, part 2, p. 213). We see no reason for giving it a different connotation here. The general scheme of paragraph b of subdivision 1 is to permit youngsters between sixteen and eighteen years of age, unaccompanied by elder licensees, to drive cars during daylight hours

only. The exception as to going to and from school was added to allow a junior operator to drive an automobile during the hours of darkness, if his journey was to or from school sessions. In the wintertime, for instance, darkness comes in late afternoon and the statutory purpose was to make it possible, during those hours, for children under eighteen to drive, without their elders, between their homes and their classes or other routine educational exercises. It would be quite an extension of that idea to hold that such a junior operator could, unaccompanied, drive, at any hour of the night, so long as he was returning from a school function. It appears that on every junior operator's license now issued, there is printed notice of a regulation made by the Commissioner of Motor Vehicles, specifically stating that driving at night by unchaperoned junior operators is not permitted, except when actually going to or from a regular school session. For affirmance here we are not relying on that legend, which did not appear on this defendant's license. But, in December, 1953, as now, the statute required that " The extent to which a holder of a junior operator's license may operate a motor vehicle thereunder shall be printed on each such license ". The license here did comply with that mandate since it quoted the statute's own words as to restricted use.

Much of appellant's brief is an argument that recreational and social activities sponsored by a school and conducted on school premises are as much a part of the educational process as formal class instruction, etc. That may well be, and our decision does not challenge it. But policy questions are for the Legislature. Our task is merely to discover legislative intent. In doing so here, we keep in mind that this is a public safety law, part of the tireless effort to reduce the number (more than 300 per day) of accidents causing personal injuries on our highways.

No one enjoys affirming a misdemeanor conviction for violation of a malum prohibitum statute, but we would have to go far beyond our powers to reverse this one.

The order should be affirmed.

CONWAY, J. (dissenting). The defendant, who was sixteen years of age, has been convicted of the *misdemeanor* (see Vehicle and Traffic Law, § 70, subd. 1) of violating section 20 (subd. 1,

par. b) of the Vehicle and Traffic Law. The arresting officer's record shows that the night was clear, the defendant courteous, that there had been no accident and that no other crime or offense was charged.

The statute involved is a penal statute since it imposes punishment for a wrong against the State (see McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 273, and cases cited therein), and it has long been the rule in this State that penal statutes are to be strictly construed against the prosecutor and in favor of the accused (*id.* § 271, and cases cited therein). Section 21 of the Penal Law, expressly providing to the contrary, does not apply here since, by its terms, section 21 relates only to the provisions of the Penal Law as such. (Indeed, notwithstanding such direction in § 21 we have held that the Penal Law itself is to be strictly construed [see, e.g., *People* v. *Nelson,* 153 N. Y. 90].) Purely statutory wrongs cannot be established by implication, and " acts otherwise innocent and lawful, do not become crimes, unless there is a clear and positive expression of the legislative intent to make them criminal. The citizen is entitled to an unequivocal warning before conduct on his part, which is not *malum in se,* can be made the occasion of a deprivation of his liberty or property." (*People* v. *Phyfe,* 136 N. Y. 554, 559; *People* v. *Shifrin,* 301 N. Y. 445, 447; *People* v. *Wallace & Co.,* 282 N. Y. 417; *People* v. *Adamkiewicz,* 298 N. Y. 176; *Winters* v. *New York,* 333 U. S. 507, 515–516.) Accordingly, unless the defendant's act is a violation of the strict letter of the Vehicle and Traffic Law, he may not be declared a *misdemeanant* and be stigmatized as a criminal with all of the lifetime consequences thereof. The fact of the conviction cannot be erased even by a Governor's pardon, for a pardon does not obliterate the record or blot out the fact that defendant has been convicted (see *People* v. *Carlesi,* 154 App. Div. 481, affd. 208 N. Y. 547, affd. 233 U. S. 51).

The majority of this court has concluded that the words " going to and from school " are unambiguous and that they must receive a narrow construction, that is, a definition which excludes extracurricular, afterhour social and athletic events, even though the activity be one in which the student's school is participating and one at which his presence has been solicited by the school.

The majority agrees that the word " school " has a number of different shades of meaning but concludes that when " school " is used in a phrase like " going to and from school " it means but one thing, a regular school session. With that conclusion we cannot agree. As used in the context of the Vehicle and Traffic Law, the word " school " is a noun. As a noun " school " has numerous meanings (see, e.g., 38 Words and Phrases [Perm. ed.], School; Webster's New International Dictionary [2d ed.]) and is by no means restricted to a regular school session. Had the Legislature intended to prohibit a junior operator from driving during hours of darkness except when going to and from " regular school sessions " it could have said so without difficulty. Instead, it selected the term " school " without any qualifications, a term which various courts have characterized as a generic term — a word of broad signification (see 38 Words and Phrases [Perm. ed.], School). It is not proper for this court to give that word a narrow definition so as to bring defendant within the proscription of the statute and have him declared a misdemeanant when his acts were otherwise innocent and lawful and the Legislature has not clearly and positively declared them to be criminal.

Extracurricular and athletic activities are sponsored by schools because the authorities deem them to be an essential and integral part of a young man's schooling. The authorities are aware that education is a broad term embracing mental, moral and physical powers and faculties alike, and that suitable and guided recreation for the youth of their community is necessary if juvenile crime is to be stemmed. The word " school " in a broad, or even in the ordinary sense, embraces such activities. As we have said, where the violation of a statute carries with it the stigma of conviction of a crime, the statute must be strictly construed against the State, or, conversely stated, must be liberally construed in favor of the defendant. To say that the term " school " means only " a regular session of school " is to construe this statute strictly against the defendant for such a conclusion can be reached only by ignoring the numerous broader meanings which the word " school " admittedly has.

" The extent to which a holder of a junior operator's license may operate a motor vehicle * * * shall be printed on each * * * [junior operator's] license * * *." (Vehicle and

Traffic Law, § 20, subd. 1, par. b.) Prior to defendant's conviction, junior operators' licenses carried the bare warning that the licensee was prohibited from operating a motor vehicle during the hours of darkness except to go to and from school. After defendant's conviction the Commissioner of Motor Vehicles saw fit to have the warning on these licenses specifically state that extracurricular activities were not included in the term "school". We think this indicates a recognition on the part of the Commissioner that, as we have concluded, it would not be unreasonable for a student between the ages of sixteen and eighteen to read the noun "school" to mean what defendant here contends it means, viz., that it includes attending and returning from a basketball game at school. If that be so this conviction may not stand.

We do not believe that, in the circumstances of this case, the construction of the statute by the Trial Justice is such a one as, according to the fair import of the terms of the statute, promotes the ends of justice.

The judgment of conviction should be reversed and the information dismissed.

LEWIS, Ch. J., DYE, FULD and VAN VOORHIS, JJ., concur with DESMOND, J.; CONWAY, J., dissents in an opinion in which FROESSEL, J., concurs.

Judgment affirmed.