THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* DANIEL CAULFIELD, JAMES KEHOE and ANDREW STOREY, Defendants.

County Court, Kings County, April 14, 1955.

*Louis Waldman* and *Seymour M. Waldman* for defendants.

*Edward S. Silver, District Attorney* (*Aaron E. Koota* of counsel), for plaintiff.

LEIBOWITZ, J. The defendants were, what is commonly termed, public loaders on a pier in Brooklyn. They move to dismiss this indictment which accuses them of willfully failing to file tax returns for the years, 1950 and 1951, and to pay the tax imposed upon " unincorporated business " as provided by article 16-A of the Tax Law.

The defendants contend that they were not engaged in a " business "; that they were merely the employees of trucking concerns; that, therefore, the Tax Law is not applicable to them; that the indictment was based on evidence before the Grand Jury which was insufficient to establish the crimes charged.

A willful violation of the Tax Law is declared to be a misdemeanor, punishable by fine or imprisonment, or both. (Tax Law, art. 16, § 376.) The statute, being penal in character, it must be strictly construed in favor of the defendants (*People* v. *Harms*, 308 N. Y. 35, 39); especially so where the crime charged is *malum prohibitum*, rather than *malum in se*. Purely statutory wrongs cannot be established by implication or conjecture and " ' acts otherwise innocent and lawful, do not become crimes, unless there is a clear and positive expression of the legislative intent to make them criminal. The citizen is entitled to an unequivocal warning before conduct on his part, which is not *malum in se*, can be made the occasion of a deprivation of his liberty or property.' " (*People* v. *Harms, supra.*)

On the civil side the rule is equally plain and definite. The court, in *Matter of Good Humor Corp.* v. *McGoldrick* (289 N. Y. 452, 455), by LEHMAN, Ch. J. said, " This court has said that ' A statute which levies a tax is to be construed most strongly against the government and in favor of the citizen. The government takes nothing except what is given by the clear import of the words used, and a well-founded doubt as to the meaning of the act defeats the tax.' "

The prime question before us is whether the defendants were businessmen, i.e., independent contractors, or merely employees.

" Few problems in the law have given greater variety of application and conflict in results than the cases arising in the borderland between what is clearly an employer-employee relationship and what is clearly one of independent, entrepreneurial dealing." (RUTLEDGE, J. in *Board* v. *Hearst Publications,* 322 U. S. 111, 121.)

In the case before us the *modus operandi* of the loaders was substantially as follows: A truck bearing merchandise would come upon the pier. One or more of the loaders, of whom there were thirty-five in number working on this pier, would then remove the merchandise from the truck onto the pier to a place convenient to the shipside. From there the longshoremen took charge and transferred the merchandise onto the vessel about to sail. Upon the arrival of a vessel the process would be reversed — the loader placing the merchandise on the truck after the cargo had been discharged onto the pier by the longshoremen. The work done by the longshoremen and the loaders was essentially the same. The longshoremen were hired by the stevedoring contractor and paid by him; the loaders were hired by the trucking companies and paid by them in the following manner: After the loading or unloading operation, the teamster or chauffeur in charge of the truck would issue a voucher to the loader noting the weight of the merchandise the loader had handled. At the end of the week, the vouchers of all the loaders working on this pier were gathered together and a committee of three, designated by all of the loaders, would call at the offices of the respective trucking companies and there receive payment from the companies for the week's work, based on the total weight of the merchandise loaded or unloaded at a specified rate per ton.

The moneys so collected were then divided among the loaders on a prorata basis, determined solely by the number of days the individual loader had worked during the current week. A loader did not share in the profits of any other loaders, although they worked together in performing their tasks. The fact that the loaders were paid on a tonnage basis and the longshoremen on an hourly or per diem basis did not change the essential character of the employment. The loader was subject to the direction of the teamster who designated the place where the merchandise was to be stored in his vehicle. A loader had no power to hire or fire any other loader, except that when the volume of work was above normal, additional temporary help was enlisted. Furthermore, a loader had no opportunity to solicit business on a competitive basis.

The work performed by a loader was unskilled. It was purely the work of a common laborer. While this is not necessarily conclusive in determining his status as businessman or employee, yet great weight should be attached to this item. (See Restatement, Agency, vol. 1, § 220, subd. d.)

Both the longshoremen and the loaders were unionized, and affiliated with the International Longshoremens Association, then a member of the American Federation of Labor.

The conclusion is therefore irresistible that the evidence before the Grand Jury fails to establish that the defendants were " business " men rather than employees, so as to come within the purview of the provisions of article 16-A of the Tax Law.

There is another equally important ground for dismissal of this indictment. The Tax Law specifically requires that there must be an " intent to evade " the provisions of the act in order to render the defaultee amenable to punishment (Tax Law, § 376, subd. 4). The evidence discloses that for many years loaders have been operating not only on this pier but on all other piers on the waterfront in the city of New York; that at no time was there any assessment levied upon the earnings of any of the loaders on the basis that they were " business men ". Indeed, no loader was ever subjected to any penalty and as far as research discloses no proceeding was ever brought against any loader for violation of said Tax Laws. It follows, therefore, that the failure to file the return and pay the tax, even if it were held that a loader came within the purview of the said Tax Law, was not done with an " intent to evade " the law. There was no evidence before the Grand Jury to show that the loaders ever knew of the existence of this Tax Law, prior to the initiation of this prosecution.

It may be of interest to note that subsequent to the filing of this indictment the Legislature, by chapter 882 of the Laws of 1953, enacted a Waterfront Commission Compact. Article VII thereof prohibits public loading but expressly permits certain employees, including the employees of truckman, to perform loading services.

Indictment dismissed. Submit order.