96 So.2d 889 (1957)
Thomas FARREY, a minor, by his father and next friend, I. Lloyd Farrey, and I. Lloyd Farrey, Individually, Appellants,
v.
Joseph BETTENDORF and Joseph R. Stein, Appellees (two cases).
Supreme Court of Florida, Special Division B.
June 5, 1957.
Rehearing Denied October 3, 1957.
*890 Nichols, Gaither, Green, Frates & Beckham, Miami, for appellants.
Dixon, DeJarnette & Bradford, Miami, for appellee Joseph Bettendorf.
Blackwell, Walker & Gray, Miami, for appellee Joseph R. Stein.
DREW, Justice.
Thomas Farrey, a minor, sustained injuries when the motor scooter on which he was riding as a passenger collided with a parked automobile. Through his father and next friend he sued appellee Bettendorf *891 (father of the minor operator of the motor scooter) and Stein (the owner of the parked car) for compensatory and punitive damages arising out of the said accident. In the same cause the father of Farrey sued both appellees for medical expenses and loss of services of the son.
The trial court dismissed the second amended complaint with prejudice as to Bettendorf and granted summary judgment as to Stein. Final judgments were entered as to both defendants, appeals were duly taken from both judgments and consolidated for our consideration.
Three points are presented on these consolidated appeals. First, the propriety of the entry of the summary judgment; second, whether Thomas Farrey, a minor on the way home from a regularly scheduled high school basketball game held in the high school gymnasium in the school in which he was a student, was a school child "being transported to or from schools or places of learning in this state" within the meaning of Sec. 320.59, Florida Statutes 1955, F.S.A., third, whether the second amended complaint failed to allege gross negligence within the meaning of Sec. 320.59.
We shall discuss and dispose of these propositions seriatim.
The second amended complaint alleged that at approximately 10:45 in the evening Thomas Farrey was riding as a passenger on a motor scooter being operated by John Bettendorf, the son of the appellee Joseph Bettendorf; that said John Bettendorf negligently ran into Stein's automobile which "was negligently and/or illegally parked in the street so far from the curb so as to obstruct traffic and create a dangerous traffic hazard at the aforesaid time and place." Affidavits of two police officers and photographs taken by one of them, together with an affidavit of the traffic maintenance supervisor for the City of Miami Beach were filed and served as provided by the rule in support of the motion for summary judgment. The affidavit of the police officer who took the photographs stated that he was called to the scene of the accident about 11:05 p.m. (some twenty minutes after the accident) and that the photographs attached to his affidavit and included in the record here fairly represented the position of Stein's car in the street at the time he arrived on the scene. The affidavit of the other officer stated that when he arrived at the scene (about 11:05 p.m.) Stein's car was parked less than twelve inches from the west side of the road and about 20 feet south of 56th street. The substance of the traffic maintenance supervisor's affidavit was to the effect that there was no Miami Beach City ordinance and no "no parking signs" prohibiting the parking of vehicles at the place where Stein's car was parked.
The location of Stein's car at the time of the accident was not established by the affidavits. Stein's counsel argued in his brief here that "The photographic exhibits clearly show the point of impact on the left rear of the vehicle and the debris and dust on the road which was knocked from under the left rear fender. If we disregard everything else, the photographs unmistakenly show that the Stein vehicle was in the same position from the time of impact until [the police officer] arrived on the scene to take the pictures." Moreover it is said in the brief that the photographic exhibits establish:
"1. The damage to the left rear bumper of the Stein vehicle.
"2. The debris and dust on the road which was knocked from underneath the left rear bumper and fender by the impact.
"3. Scratches on the road where the motor scooter swerved to the left as alleged in the second amended complaint. (R. 35-40.)
"4. Damage to the right rear fender of the motor scooter.
*892 "5. Police officer directing traffic.
"6. Other vehicles parked on both sides of the street."
We cannot accept as facts  nor could the lower court properly have done so  the conclusions drawn by counsel for Stein from the photographs. The record does not connect the quoted conclusions with the operator of the motor scooter. If there is damage to the left rear bumper of the Stein vehicle, a conclusion not justified by an examination of the photograph, there is no showing that it was caused by the motor scooter nor is there any connection in this record between the debris and dust on the road with the motor scooter nor even for that matter with the Stein vehicle. The record fails to show that what counsel conceives to be dust or debris on the street is actually that. Nor can we find from the photograph any scratches on the street which are connected with the motor scooter nor does the record show that the dent on the motor scooter was caused by the accident. The photograph does show a police officer directing traffic but he was doing so admittedly at the time some twenty minutes at least following the event.
Rule 1.36(c), 1954 Rules of Civil Procedure, 30 F.S.A., provides that "The judgment or decree sought shall be rendered forthwith if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment * * * as a matter of law." We have repeatedly held that the rule providing for summary judgments in appropriate instances was never intended to be a substitute for jury trials. Not only does the rule provide that the movant must show that there is no genuine issue as to any material fact but in addition thereto, that the moving party is entitled to a judgment as a matter of law. The courts have been necessarily cautious in those instances where the rule was invoked in tort actions because of the well-settled principle that the question of negligence is ordinarily one to be resolved by a jury from the particular facts and circumstances in each case. Where it has been invoked and in those instances where summary judgments have been approved, the burden on the moving party is to establish the essential requirements of the rule. It is only in those instances where all essential facts are beyond dispute and nothing remains but to determine whether the moving party is entitled to a judgment based on those facts that the summary proceeding may be invoked. Whitehall Realty Corp. v. Manufacturers Trust Company, Fla. 1955, 81 So.2d 475, Williams v. City of Lake City, Fla. 1953, 62 So.2d 732, 733. The location of Stein's car at the time of the accident is the material fact basically essential to support the questioned judgment. The complaint alleged that the car was "negligently and/or illegally parked at the time the accident occurred." The location of the car some twenty minutes later sheds little or no light upon this material point unless it be shown  as admittedly it was not  that the location of the car had not been changed. It is, therefore, obvious that the affidavits of the police officers and the photographs do not place the essential facts beyond dispute. The missing links in the chain of evidence render the affidavits meaningless in the disposition of the motion.
It is contended by appellant that the affidavit of the traffic maintenance supervisor was a nullity for the reason that the facts therein contained would not be admissible in evidence as provided by Rule 1.36(c), 1954 Rules of Civil Procedure because he is not competent, so it is argued, to testify as to the matters related. We do not agree. Whether there were "no parking signs" at the location was a fact which any competent witness could establish. His assertion that no Miami Beach City ordinance prohibited the parking of vehicles where Stein's vehicle was located is likewise evidence which we think is admissible. At least it was sufficient to *893 require the production of a counter-affidavit establishing the existence of such an ordinance if in fact one was in effect. It was the duty of the plaintiff to do so, under such circumstances, for the purpose of resolving this issue of fact. If an ordinance existed which prohibited parking in this area, this issue could well and properly have been determined on the motion for summary judgment and at least that much of the case eliminated from the trial of the cause under the provisions of Rule 1.36(c), 1954 Rules of Civil Procedure. On the first point raised, therefore, the judgment as to Stein is reversed with leave to the lower court to consider anew the motion for summary judgment and to allow the filing of additional affidavits by both parties if in his judgment it should be desirable to secure a just, speedy and inexpensive determination of this action.
It is alleged in the second amended complaint:
"That at the time of the accident as heretofore described the said driver of the defendant's motor scooter vehicle, John J. Bettendorf, a minor, and the minor plaintiff, Thomas Farrey, a passenger on said vehicle, were students at St. Patrick's High School at Miami Beach, Florida, and had attended a regularly scheduled High School Bastketball Game at their school's gymnasium as they were encouraged to do by their school officials as a part of the school's physical, mental and social training of its students; and after a deviation by a friend's house and finding no one home, resumed their trip home from school when the accident occurred."
Sec. 320.59, Florida Statutes 1955, F.S.A., provides that to enable a guest riding in a motor vehicle to recover from the owner or operator, he must prove that the injury received was occasioned by the gross negligence of the operator. This statute is usually referred to as the guest statute. It contains a proviso, however, "that nothing in this section shall apply to school children or other students being transported to or from schools or places of learning in this state."
The Legislature of this State in its wisdom determined that the class of persons included in the proviso above quoted may recover damages for injuries received when riding as a guest in an automobile upon proof of simple negligence rather than gross negligence. We do not believe, however, the Legislature intended to extend the proviso to the extent of allowing recovery upon such degree of proof to any of the described class except those children or students being transported to or from regular school sessions conducted by such schools or places of learning. The office of a proviso in a statute is not to enlarge or extend the act of which section it is a part but rather to be a limitation or a restraint upon the language which the Legislature has employed. A proviso is to be construed strictly and limited to objects fairly within its terms, or to qualify or restrain its generality. Applying the rule of strict construction, we must conclude that the proviso was not intended to encompass a multitude of situations nor enlarge its operation to include classes of people or situations not reasonably contemplated nor intended to be included by that body of the government in which this exclusive jurisdiction rests. The common man would comprehend the limitation as being confined to those instances where, as occurs daily throughout the land, children and other students are transported to a school session in their respective schools or places of learning in the morning and returned later in the day from such school sessions to their respective abodes. Obviously it was not the purpose of the lawmakers to extend the proviso to extra-curricular functions such as basketball and football games, school parties, plays and an unknown and unlimited number of similar activities.
This question has not before been decided by us but we are impressed with *894 the logic of the New York Court of Appeals in the recent case of People v. Harms, 1954, 308 N.Y. 35, 123 N.E.2d 627, 628, where that court dealt with somewhat similar provisions contained in a New York City ordinance. The ordinance prohibited minors of a designated age from driving at night without an older licensed driver "other than going to and from school." The stipulated facts were startlingly similar to those involved here and disclosed that the minor involved was going to his home in the evening after a basketball game at his high school  a game in which the students were encouraged to attend by the school officials. In that case the court said:
"The word `school' has a number of different shades of meaning, Webster's Collegiate Dictionary, 5th Ed., p. 889. But when `school' is used without the preceding article in a phrase like `going to school' it means, according to the lexicographers, as well as the usage of the `man in the street', a school session, Oxford Dictionary, Vol. 8, part 2, p. 213. We see no reason for giving it a different connotation here. The general scheme of paragraph b of subdivision 1 is to permit youngsters between sixteen and eighteen years of age, unaccompanied by elder licensees, to drive cars during daylight hours only. The exception as to going to and from school was added to allow a junior operator to drive an automobile during the hours of darkness, if his journey was to or from school sessions. * * *
"Much of appellant's brief is an argument that recreational and social activities sponsored by a school and conducted on school premises are as much a part of the educational process as formal class instruction, etc. That may well be, and our decision does not challenge it. But policy questions are for the Legislature. Our task is merely to discover legislative intent. * * *"
The logic and reasoning applied in the determination of that case is sound and we adopt it. We think this conclusion is in accord with the evident intent of the Florida Legislature.
The third point raised on this appeal requires an analysis of that portion of the second amended complaint which purports to allege gross negligence on the part of the operator of the motor scooter. Such complaint alleges:
"That the defendant, Joseph Bettendorf, knowingly entrusted a motor vehicle to his fourteen-year old son who was known to the said defendant to be a reckless driver and too young to lawfully drive in the City of Miami Beach and that the above-mentioned gross negligence of John J. Bettendorf consisted of knowingly operating a motor scooter under the age of sixteen in violation of the laws of the City of Miami Beach at night when his light was dim, in a dark and unlighted street area at a speed in excess of the lawfully prescribed limit, although having been warned shortly prior to the accident by a school official to cease speeding and to drive prudently, and while driving at such excessive speed the minor John J. Bettendorf, turned his head around and talked with the minor plaintiff, thereby intentionally taking his eyes off the road and intentionally not looking where he was going. Upon turning around and looking where he was going the minor Bettendorf, on discovering that he was about to run into a parked car, deliberately swerved his vehicle to the left, thereby crushing and severely injuring the minor plaintiff."
The essence of the charge of gross negligence is that the minor Bettendorf operated said motor scooter "in violation of the laws of the City of Miami Beach at night when his light was dim in a dark and unlighted street at a speed in excess of the lawfully prescribed limit * * * *895 and while driving at such excessive speed the minor John J. Bettendorf turned his head around and talked with the minor plaintiff thereby intentionally taking his eyes off the road and intentionally not looking where he was going." Whether the alleged course of conduct of the operator of the motor scooter constituted gross negligence is a close question. We are inclined to the view that the question is close enough to require a jury to settle the issue. This conclusion is supported by the proviso of the statute "that the question or issue of negligence, gross negligence, and willful or wanton misconduct * * * shall in all such cases be solely for the jury." Intentionally not looking where one is going when operating a dangerous instrumentality is essentially the same as operating such dangerous instrumentality with the eyes of the operator closed. Obviously a momentary closing of the eyes or a momentary diversion of the sight from the road ahead to the back or one side would not constitute gross negligence but if such diversion from the way ahead is for a substantial length of time, such conduct would demonstrate an obvious lack of slight care which would bring it within the area of negligence defined as gross. Faircloth v. Hill, Fla. 1956, 85 So.2d 870. Moreover, the operator of such vehicle under such circumstances would be charged under the law with the knowledge that such conduct would probably and most likely result in injuries to persons or property along the way and such conduct would fall within the rule which brands as gross negligence a course of conduct where the danger to persons or property is clear and imminent. Bridges v. Spear, Fla. 1955, 79 So.2d 679.
In Faircloth v. Hill, supra, 85 So.2d at page 872 we said:
"We have held that all of the circumstances of each case entering into the particular happening must be considered in order to determine whether liability exists. See Dexter v. Green, Fla. 1951, 55 So.2d 548. In the same case we held that while each separate act involved in the drama might not in and of itself establish gross negligence, nevertheless, the entire course of conduct of the automobile driver under all of the circumstances and in the light of all of the related factors taken collectively might well establish the existence of gross negligence by pointing to the conclusion that the driver of the car knew or should have known that his conduct placed others in danger of grave injury and that under all of the circumstances he could be found guilty of a conscious indifference for the safety of others."
Reverting to the proviso in Section 320.59 last quoted above, in the case of Cormier v. Williams, 1941, 148 Fla. 201, 4 So.2d 525, where we upheld the constitutionality of this statute in an attack made upon it on the ground that the requirement for submission of the issue of gross negligence to the jury was an attempted exercise of judicial powers by the Legislature, we said that the power remained in the court to pass upon the legal sufficiency of the evidence to establish gross negligence and in numerous cases we have held that it is within the power of this court to strike down a complaint when the facts alleged there show as a matter of law that the course of conduct charged did not constitute gross negligence. We think the sound rule and one which has been followed in the recent decisions of this Court is to resolve the doubt in the pleading stage in such manner as to place the issue before the jury for its determination. The line between gross and simple negligence is a difficult one to draw. Under our system of jurisprudence which recognizes the jury system as a basic concept in the administration of justice, we think the wise course to follow is one which leaves this question in the hands of the jury in those instances where the line is indistinct.
We, therefore, conclude as to the third point that the court erred in holding that the complaint failed to charge gross negligence *896 and that the cause should be and hereby is reversed on this point.
Reversed in part and affirmed in part.
TERRELL, C.J., HOBSON, J., and STURGIS, Associate Justice, concur.