Randy Miller Executive Director, Department of Revenue Tallahassee
QUESTIONS:
1. In the provision limiting local government to the millage necessary to provide revenue not exceeding 105 percent of the previous year's ad valorem revenues `for operating purposes,' does the phrase `for operating purposes' refer to all funds found within the budget of a covered taxing authority, including nonvoted levies for capital improvements not using debt servicing, but included within the operation budget?
2. To what situation does the exclusion from the millage cap for `millage necessary to prevent the impairment of a contract entered into prior to June 1, 1979,' apply?
3. In the event that a unit of local government exceeds the 105-percent revenue cap without holding the appropriate referendum, does the Department of Revenue have authority to `cut off' state funds and, if so, which funds?
SUMMARY:
Until and unless judicially determined otherwise, the only exceptions to the 105-percent limitation on millage increases are those specifically enumerated in ch. 79-332, Laws of Florida, and the phrase `operating purposes' should be broadly construed so as not to create any exceptions beyond those spelled out in the act. The exclusion from the millage caps for `millage necessary to prevent the impairnment of a contract entered into prior to June 1, 1979,' is broad enough to apply to any legally binding contract which had been entered into prior to that date. The Department of Revenue or any other state agency or officer is not charged with any duty or responsibility by the terms of s. 2 of ch. 79-332 to `cut off' state funds to local government units which do not comply with the 105-percent revenue cap imposed by s. 200.066, F. S., as enacted by ch. 79-332.
STATEMENT OF FACTS:
Resolution of these questions requires construction of the provisions of s. 200.066(1), F. S., as enacted by s. 2 of ch. 79-332, Laws of Florida, which reads:
 For the tax year 1979, except to the extent of the minimum millage requirement of s. 218.23(1)(c) for units of local government participating in state revenue sharing programs, and millage requirements imposed by special acts, no local taxing authority other than school districts, multi-county taxing authorities, and municipal service taxing units, shall levy a millage rate for operating purposes, which exclusive of new construction, additions and deletions, geographical boundary changes, millage necessary to prevent impairment of a contract entered into prior to June 1, 1979 and millage voted pursuant to ss. 9(b) and 12, Art. VII of the State Constitution would provide more than 105 percent of the ad valorem tax revenue provided by the millage rate levied for operating purposes in the 1978 tax year, unless such levy (hereinafter referred to as the referendum rate) has been approved by referendum, pursuant to this section.
Section 2 of ch. 79-332 took effect upon becoming law on July 3, 1979. However, s. 2 stands repealed effective June 30, 1980. Section 10, ch. 79-332.
AS TO QUESTION 1:
The bill does not define the phrase, `operating purposes.' Moreover, since the bill was introduced and passed very close to the end of the 1979 legislative session, there are no committee reports or other background documents available to aid in the construction of this bill. My research does not disclose any judicial treatment or definition of this precise terminology in any similar context. As indicated by the title of ch. 79-332,supra, and the section heading or title (furnished by the Legislature), the phraselogy `operating purposes,' is employed in a setting of ad valorem tax relief for the taxpayers and limitation on millage to be levied for the 1979 tax year. When the language used in a statute is ambiguous, the title of the act, as well as the section headings used by the Legislature, may be resorted to as an aid to construction and determination of legislative intent or purpose. Burger v. Jackson, 23 So.2d 265
(Fla. 1945); Foley v. State, 50 So.2d 179, 184 (Fla. 1951); Jackson Lumber Co. v. Walton County, 116 So.2d 771 (Fla. 1928)appeal dismissed 73 L.Ed. 1011 (1928); Curry v. Lehman, 47 So. 18
(Fla. 1908); and Board of Public Inst. v. Dade County Classroom Teachers Ass'n., 243 So.2d 210, 212 (3 D.C.A. Fla., 1971). Moreover, it has been held that the scope of an act is defined by its title. Finn v. Finn, 312 So.2d 726, 730 (Fla. 1975), approving294 So.2d 57 (3 D.C.A. Fla., 1974). The title to ch. 79-332 describes the portion of the bill in question as `providing a limitation on the rate of increase in ad valorem operating millagelevies . . . providing exceptions . . . .' (Emphasis supplied.) Although not determinative of the instant question, I note that very similar phraseology was employed by the Legislature in s. 210.21, F. S. 1953 (repealed by ch. 29750, 1955, Laws of Florida), which required municipalities to reduce their operating ad valorem tax millage to the extent prescribed by that law for and with respect to benefits received under the cigarette tax law. Section210.01(13), F. S., then defined and continues to define `operating ad valorem millage' to mean `all millages other than those fixed for debt service.'
In construing a statute the whole enactment should be examined (2ASutherland Statutory Construction, s. 46.05 (C. Sands 4th Rev. ed. 1972)), and the language used in the law should be read with reference to the purpose designed to be accomplished (here, as hereinbefore noted, ad valorem tax relief and limitation on millage to be levied for the 1979 tax year), and the means adopted to accomplish such purpose, Stein v. Biscayne Kennel Club, Inc.,199 So. 364 (Fla. 1940). The title of ch. 79-332, supra, demonstrates that the Legislature purposed ad valorem tax relief (`an act related to ad valorem tax relief') and a limitation on the rate of increase of operating millage levies by counties and municipalities for the 1979 tax year. Examination of the provisions of s. 2 of ch. 79-332 in its entirety discloses that, with certain exceptions therein prescribed, no county or municipality was to levy a millage rate for operating purposes which (except for the listed exclusions) would provide more than 105 percent of the ad valorem tax revenue provided by the millage rate levied for operating purposes in the 1978 tax year, unless such increased levy or rate of increase was approved by the voters in a referendum on the question of such increase of taxes over the prior tax year. The statute does not employ fiscal or accounting terminology relating to the appropriation, outlay, or expenditure of funds. The term `expenses' or `operating expenses' is not used anywhere in s. 2 of ch. 79-332; rather, the language employed throughout s. 2 is `purposes' and `operations.' Neither are such fiscal terms as `capital purposes,' `capital expenditures,' `operating capital outlays,' or `fixed capital outlays' anywhere used in either the title to or the enacting provisions of s. 2 of ch. 79-332. The notice to the taxpayers (and voters) required and prescirbed by s. 200.066(3), F. S. (s. 2, ch. 79-332), refers to proposals `to increase your property taxes (by a percentage of increase over prior tax yer millage).' One of the exceptions provided for, `millage requirements imposed by special acts,' fails to anywise differentiate the character of or purpose for such `millage requirements,' whether for `operating expenses,' `capital expenses,' or `capital outlays' or to carry out certain functions and operations of an affected county or municipality or an agency thereof. One of the exclusions enumerated in s.200.066(1) (s. 2, ch. 79-332), `millage voted pursuant to ss. 9(b) and 12, Art. VII,' embraces `payment of bonds' and the issuance of `bonds, certificates of indebtedness . . . payable from ad valorem taxation . . . to finance or refinance capital projects . . . when approved by vote of the electors.'
The word `operate' is an intransitive verb (Webster's NewTwentieth Century Dictionary, Unabridged, 2nd ed.) and means to act; to perform work; to be in action so as to produce an effect. `Operating' means acting, exerting some agency or power. 67 C.J.S.Operating, p. 875. The word `purposes' appears to be used in the noun form and means the end or aim to which the view is directed in any plan, manner, or execution. 73 C.J.S. Purposes, p. 1260. The word `operations' (see s. 200.066(4)(a) (s. 2, ch. 79-332, Laws of Florida)) appears to be used in the noun form and means the act, method, process, or effect of operating. Webster, supra.See, 67 C.J.S. Operation, p. 876.
Upon consideration of the foregoing viewed in light of the evident legislative purpose and objective, I am of the view that the phraseology, `for operating purposes,' as employed in the context of s. 200.066(1), F. S., enacted by s. 2 of ch. 79-332, supra, refers and relates to the conduct and carrying on of all lawfully authorized or imposed functions, duties, works, and improvements of the affected counties and municipalities, and the millage rate and levy referred to therein is levied for such purposes and embraces the funding of all activities or operations (by ad valorem taxation) of such counties or municipalities except for those millages and purposes specifically excepted or excluded from the operative force of s. 2 of ch. 79-332 by the express terms thereof.
The title of ch. 79-332, supra, which relates to `ad valorem tax relief,' declares and notes that the act is `providing exceptions' from its operation. Those exceptions (and exclusions) are expressly enumerated in s. 200.066(1) as enacted by ch. 79-332, and some of them in paragraph (4)(a) thereof. No exception is made either in the title of the act or any enacting provision thereof for capital expenditures or improvements; nor, indeed, directly or expressly for debt service, although debt service in the ordinary use of that term for fiscal purposes is included within the explicated exclusion for `millage voted pursuant to ss. 9(b) and 12, Art. VII of the State Constitution.' `Taxes levied for periods not longer than two years when authorized by vote of the electors' are, of course, also excepted or excluded from the operation of the act. I might note that such special voted millages might very well include the use of the tax revenues derived thereform for capital improvements or maintenance. These considerations seem to compel the conclusion that the Legislature intended no other exception from the purposed ad valorem tax relief objective. Had it intended to make an exception or exceptions for capital expenditures, capital improvements, or maintenance of any kind or character, it would have been a simple matter for it to have done so. 2A Sutherland Statutory Construction s. 47.11 (c. Sands 4th Rev. ed. 1972).
A general and well-recognized rule of statutory construction is that the mention of one thing in a statute implies the exclusion of another — expressio unius est exclusio alterius. Thayer v. State, 335 So.2d 815, 817 (Fla. 1976); Dobbs v. Sea Isle Hotel,56 So.2d 341 (Fla. 1952); and Ideal Farms Drainage District v. Certain Lands, 19 So.2d 234 (Fla. 1944). The maxim also applies to statutes which expressly enumerate exceptions. `The enumeration of exclusions from the operation of a statute indicates that it should apply to all cases not specifically excluded.' 2ASutherland, supra, s. 47.23. When a statute contains express exceptions, there is a strong inference that no other exceptions were intended and that the exceptions will not be implied when the words of a statute are unambiguous. Biddle v. State Beverage Dept., 187 So.2d 65 (1 D.C.A. Fla., 1966), and State Road Dept. v. Levato, 192 So.2d 35 (1 D.C.A. Fla., 1966); cert. discharged199 So.2d 714 (1967). Exceptions or provisos in statutes are to be strictly construed. Coe v. Broward County, 327 So.2d 69 (4 D.C.A. Fla., 1976) aff'd 341 So.2d 762 (Fla. 1976), and Farrey v. Bettendorf, 96 So.2d 889 (Fla. 1957). Thus, it is my conclusion that the only exceptions to the 105-percent limitation on millage increases are those specifically enumerated in ch. 79-332, supra, and that the phrase `operating purposes' should be broadly construed to include all activities, operations, works, and improvements of the affected local governments and so as not to create any exceptions beyond those that are spelled out in the act.
AS TO QUESTION 2:
Your second question concerns the scope of the exception noted above for `millage necessary to prevent the impairment of a contract entered into prior to June 1, 1979.' As to this language, the legislative history of the bill does provide some insight as to what was intended thereby. This exception to the millage limitation was not contained in the original bill, but was added through an amendment in the House of Representatives. The comments surrounding the proposal and adoption of this amendment, as found in the tapes of the sessions of the House of Representatives, indicate that a major reason for this amendment was to ensure that a sufficient millage would be available to fund collective bargaining contracts which had already been entered into prior to June 1, 1979. Although the failure of the legislative body to fully fund such an agreement does not constitute the impairment of a contract in a constitutional sense (United Faculty of Florida,et al., v. Board of Regents, 365 So.2d 1073, 1078 (1 D.C.A. Fla., 1979), and s. 447.309(2), F. S.), it nevertheless appears that the Legislature contemplated, by the insertion of this language, allowance for the imposition of a millage in excess of the limit when such a millage was necessary to fund a collective bargaining agreement entered into prior to June 1, 1979. It is important to keep in mimd that, although the Legislature may have inserted this language for the specific purpose of allowing collective bargaining contracts to be funded, the language is actually broad enough to apply to any legally binding contract (or the impairment thereof by the prescribed limitation of millage) which had been entered into prior to June 1, 1979. The only qualification of the term `contract' is that it be `entered into prior to June 1, 1979.' It is a broad and comprehensive concept and term which includes every description of agreement. See, e.g., Black's Law Dictionary, 4th Rev. ed., pp. 394-397, and 17 C.J.S. Contracts s. 1, p. 537. Kislak v. Kreedian, 95 So.2d 510 (Fla. 1957). A statute couched in broad and comprehensive terms ordinarily is construed to include everything embraced within such terms. See State v. City of Jacksonville, 50 So.2d 532 (Fla. 1951), and Florida State Racing Commission v. McLaughlin, 102 So.2d 574 (Fla. 1958). Thus, it is not possible within the scope of an opinion such as this to specify all situations, or any particular type of `contract,' to which the exclusion, `millage necessary to prevent impairment of a contract entered into prior to June 1, 1979,' (Emphasis supplied.) prescribed by s. 2 of ch. 79-332, supra, may apply. The question of the necessity to levy a sufficient millage rate in order to prevent the impairment of any such `contract' is a mixed question of law and fact beyond the authority of my office to determine, it essentially being a judicial question.
AS TO QUESTION 3:
Your final question actually deals with s. 200.066(4), F. S. (as enacted by s. 2, ch. 79-332, supra). That subsection in pertinent part provides that, if the electors fail to approve the specified referendum rate, thae governing body of the affected county or municipality shall reconvene its budget hearings and adopt a new operating millage levy which provides no more than 105 percent of the ad valorem tax revenues expended for operations in the 1978 tax year, excliusive of the described exceptions, or `contemplates receipt of no state funds.' This subsection does not in terms apply to or purport to exact any penalty from any county or municipality which may have construed the phraseology, `for operating purposes,' in s. 2 of ch. 79-332 differently than I have in question 1 and deemed that phrase to exclude nonvoted levies for capital improvements and which, therefore, did not submit any levy for any such capital improvements to a referendum for approval by the electors as provided in s. 2 of ch. 79-332.
Section 200.066(1), F. S. (as enacted by s. 2, ch. 79-332, supra), provides for no form of coercion to obtain compliance with its mandated requirement that any millage exceeding 105 percent of the tax revenue provided by the 1978 millage rate for operating purposes be approved by referndum; nor does that subsection impose any penalty for failure to submit the described referendum rate for approval or rejection by the voters as provided for by s.200.066(3) and (4), as enacted by s. 2 of ch. 79-332. Neither does s. 200.066(4)(b) provide any effective coercion or penalty to obtain compliance therewith, nor authorize any state agency or officer to withhold any state funds from any such noncomplying local government during the period between the effective date of ch. 79-332, July 3, 1979, and the effective date of its repeal, June 30, 1980. No consideration is given in this opinion to the question of whether any such noncomplying county or municipality levying a nonvoted millage rate for capital improvements complied with the requirements of s. 200.065, F. S., that any millage rate exceeding that certified to the county or municipality by the property appraiser be properly noticed and public hearings be held thereon for the purpose of public comment upon such proposed increase over the certified millage. Although not necessarily controlling, the title of ch. 79-332 conveys no notice that any penalty is to be exacted from any noncomplying county or municipality or the nature or extent of such penalty or that the Department of Revenue or any other state agency or officer is charged with any duty to withhold any state funds from such local governments; nor does it specify any particular state fund or funds from which any state moneys derived from any source are to be withheld. Cf. State ex rel. Housing Authority of Plant City v. Kirk, 231 So.2d 522, 523-524 (Fla. 1970). It is settled that a state administrative agency or officer possesses no inherent power and may exercise only such authority as expressly or by necessary implication is conferred by law. See, e.g., 67 C.J.S. Officers ss. 190, 192; Lang v. Walker, 35 So. 78, 80 (Fla. 1903); Gessner v. Del-Air Corporation, 17 So.2d 522 (Fla. 1944); and AGO's 071-28, 075-299, 078-77, 078-94, 078-101, and 078-135. And, if any reasonable doubt exists as to the lawful existence of a particular power, it should not be exercised. See, e.g., White v. Crandon,156 So. 303, 305 (Fla. 1934), and Gessner v. Del-Air Corporation,supra. There must exist some basis in a statute for the exercise of any jurisdiction and power by an administrative agency or officer and such administrators may act only in the mode prescribed by statute. Edgerton v. International Company,89 So.2d 488, 490 (Fla. 1956). In the instant situation, no proceudres for determining compliance or noncompliance with the terms of ch. 79-332 are prescribed; no state agency or officer is charged with any responsibility, nor are any duties imposed, for determining compliance or noncompliance; and no state agency or officer is empowered to penalize in any manner or withhold any state funds from a noncomplying local government. Indeed, I have grave doubts that the Legislature's power to appropriate to or withhold state funds from the several counties and municipalities may be unqualifiedly delegated to a state administrative agency or officer. In any event, I cannot say that any such authority may be inferred from the language employed in s. 2 of ch. 79-332, and the statute makes no provision whatever for the Department of Revenue to `cut off' or withhold any particular state funds or any funds in general from any county or municipality which may have failed to comply with the terms of s. 2 of ch. 79-332 during the period of July 3, 1979, to June 30, 1980; nor do I find that any such authority or duty is necessarily implied from any express grant of authority or express duty imposed by that statute. While an express power duly conferred may include implied authority to use means necessary to make the express power effective, such implied authority may not warrant the exercise of a substantive power not conferred. Molwin Inv. Co. v. Turner, 167 So. 33 (Fla. 1936), and AGO's 073-375 and 078-135. Implied power cannot exist in the absence of some express grant of authority or the express imposition of a duty. In the instant situation, ch. 79-332 makes no express grant of authority to the Department of Revenue or any other state agency or officer with respect to the `cutoff' or withholding of state funds of any character from any noncomplying county or municipality and does not expressly impose any duty on the department or any other agency or officer of the state. I therefore conclude that your department is not duly charged with any duty or responsibility by the terms of s. 2 of ch. 79-332 in connection with the enforcement of s. 200.066(1) and (4)(a) or (b) as enacted by ch.
Prepared by: Barbara Staros Harmon, Assistant Attorney General