PER CURIAM.
Jimmie E. Williams was the defendant and third party plaintiff in a foreclosure action resulting from the nonpayment of the mortgage on his home. Williams’ counterclaim alleged breach of contract, conspiracy, and discrimination by his mortgagee, insurance carrier, and adjuster. The trial court granted summary judgment in the counter defendants’ favor. We affirm.
Williams owned a home that had been severely damaged by Hurricane Andrew. The balance on Williams’ mortgage was some $66,097. Williams claimed that his mortgagee discriminated against him in not allowing him to pay off his mortgage with insurance proceeds from the hurri *588 cane. However by his own admission, Williams did not have the full amount needed to pay off the mortgage and his insurer would not release a balance remaining payable until Williams initiated certain repairs on the property.
Moreover, contrary to Williams’ assertions otherwise, his own deposition testimony established that any failure to immediately pay the full amount of the insurance claim could not have been the result of discriminatory practices. Williams claimed that an insurance adjuster came to his home and told his girlfriend, a Caucasian, that the home was a total loss and that he would be returning with a check. Williams further alleged that when the adjuster returned and met Williams, who is African American, the adjuster changed his answer and told Williams that only a partial payment would be immediately forthcoming.
This account, however, conflicted with the parties’ initial account of what had occurred. The girlfriend’s initial testimony was that she received a telephone call from the adjuster, relaying the information at issue. Only later, in the course of the litigation, did the girlfriend claim to remember an adjuster coming to Williams’ home. Because race would not have been apparent from the phone conversation, there was no basis for the claim that Williams was being treated differently based on his race. A party may not, after having given an affidavit in a cause, subsequently change his testimony in order to create an issue on his opponent’s motion for summary judgment. See Willage v. Law Offices of Wallace and Breslow P.A., 415 So.2d 767, 768-69 (Fla. 3d DCA 1982); see also Ellison v. Anderson, 74 So.2d 680 (Fla.1954); Inman v. Club on Sailboat Key, Inc., 342 So.2d 1069 (Fla. 3d DCA 1977); Maryland Casualty Company v. Murphy, 342 So.2d 1051 (Fla. 3d DCA 1977).
Moreover, the fact that other home owners in his neighborhood may have received speedy payment in full for hurricane damages also does not support Williams’ claim. As he concedes, none of those homes were covered by the same insurer or adjuster. Finally, by Williams’ own admission, in response to his telephone inquiries, counter defendants separately and uniformly denied immediate payment under the facts outlined. Thus, Williams’ own testimony demonstrated a lack of collusion and an adherence to general corporate policies.
In sum, we agree with the trial court’s conclusion that the claims at issue were totally without merit and the summary judgment in counter defendants’ favor was appropriate. A movant for summary judgment has the initial burden of demonstrating the nonexistence of any genuine issue of material fact. Once a movant tenders competent evidence to support his motion, however, the opposing party must come forward with counter evidence sufficient to reveal a genuine issue. It is not enough for the opposing party merely to assert that an issue does exist. See Harvey Building, Inc. v. Haley, 175 So.2d 780 (Fla.1965); Farrey v. Bettendorf, 96 So.2d 889 (Fla.1957). Williams relied on no more than his beliefs and personal impressions of racially neutral events. The issues of fact he raised were purely “paper issues” that did not preclude entry of summary judgment. See Reflex, N.V. v. UMET Trust, 336 So.2d 473, 474-75 (Fla. 3d DCA 1976).
Accordingly, the order under review is affirmed.