# Third District Court of Appeal

## State of Florida

Opinion filed October 12, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-1194
Lower Tribunal No. 15-641-K
_____

**Arthur Sager,**
Appellant,

vs.

**Madalina Blanco and Ricardo F. Blanco,**
Appellees.

An appeal from the Circuit Court for Monroe County, Timothy J. Koenig, Judge.

Robert C. Tilghman, P.A., Robert C. Tilghman, Nathan E. Eden, P.A., and Nathan E. Eden, for appellant.

Cooney Trybus Kwavnick Peets, Warren Kwavnick, and David F. Cooney (Fort Lauderdale), for appellees.

Before SCALES, LINDSEY, and MILLER, JJ.

MILLER, J.

We deny appellees' motion for rehearing but grant clarification. We withdraw our prior opinion and substitute the following in its stead.

This appeal involves the application of vicarious liability under the dangerous instrumentality doctrine first adopted by the Florida Supreme Court over a century ago in Southern Cotton Oil Co. v. Anderson, 86 So. 629 (Fla. 1920).[1] The primary issue is whether an injured party is precluded from pursuing a claim for vicarious liability against a vehicle owner when the driver has weaponized the vehicle with the intent to cause bodily harm. Adhering to an expansive body of cogent legal authority, we conclude that only where such misconduct is reasonably foreseeable may liability be imputed under the doctrine.

## BACKGROUND

Appellant, Arthur Sager, responded to a domestic dispute at the residence of his neighbor, appellee, Madalina Blanco. Having just assaulted his girlfriend, Ricardo Blanco, Ms. Blanco's son, fled from the scene driving his mother's vehicle. He then shifted the vehicle into reverse and

---

[1] Mr. Sager further appeals an order denying his motion for leave to amend to add a claim for punitive damages. This portion of the appeal is dismissed as untimely. See Fla. R. App. P. 9.130(b).

accelerated backward, striking Mr. Sager and dragging him under the vehicle. As a result, Mr. Sager sustained significant injuries.

Mr. Blanco was arrested and charged with aggravated battery with a deadly weapon, a charge for which he was later convicted. Mr. Sager subsequently filed suit against both mother and son. The complaint alleged negligent entrustment and vicarious liability under the dangerous instrumentality doctrine against Ms. Blanco, along with negligence against her son.

Shortly before trial, Ms. Blanco filed a motion to strike or dismiss or, alternatively, for judgment on the pleadings or summary judgment. In the motion, she argued that because she had admitted to ownership of the vehicle for purposes of vicarious liability, the negligent entrustment claim was redundant and should not be used as a conduit for admitting evidence of Mr. Blanco's driving history. In opposition, Mr. Sager argued he was entitled to advance alternative legal theories, and, given the statutory limitation on damages associated with vicarious liability under the dangerous instrumentality doctrine, negligent entrustment potentially exposed Ms. Blanco to greater liability. He further sought to estop both Blancos from denying the essential allegations of aggravated battery during the civil trial. Ms. Blanco then offered to waive the statutory limitation on damages for

3

vicarious liability, but Mr. Sager rejected the offer, asserting he was entitled to enforce the parties' written stipulation to submit the negligent entrustment claim to the jury.

The trial court ultimately rendered judgment in favor of Ms. Blanco on the negligent entrustment claim and granted the motion to estop the Blancos from denying the essential elements of aggravated battery. Then, acting on its own volition, the court entered judgment on the vicarious liability claim in favor of Ms. Blanco. In so ruling, the court cited sections 772.14 and 775.089, Florida Statutes (2020), for the proposition that because Mr. Blanco had been criminally convicted of intentionally using the motor vehicle in a weapon-like manner, Mr. Sager was foreclosed from arguing any lesser degree of culpability during the civil trial. Relying upon certain language in Burch v. Sun State Ford, Inc., 864 So. 2d 466 (Fla. 5th DCA 2004), the court further concluded the weapon-like use of the vehicle precluded a vicarious liability claim under the dangerous instrumentality doctrine. Mr. Sager, timely but unsuccessfully, sought reconsideration. The instant appeal ensued.

**ANALYSIS**

Over one hundred years ago, the Florida Supreme Court adopted the dangerous instrumentality doctrine in the seminal case of Southern Cotton Oil Co. v. Anderson, 86 So. 629 (Fla. 1920). There, the court merged

4

common law concepts governing master-servant relationships and strict liability for ultrahazardous activities to impose strict vicarious liability on an automobile owner for the negligent acts of the driver. Analogizing the entrustment of a motor vehicle to that of a locomotive, the court articulated the dangerous instrumentality doctrine as follows:

> [O]ne who authorizes and permits an instrumentality that is peculiarly dangerous in its operation to be used by another on the public highway is liable in damages for injuries to third persons caused by the negligent operation of such instrumentality on the highway by one so authorized by the owner.

S. Cotton, 86 So. at 638; see also Phila. & Reading R.R. Co. v. Derby, 55 U.S. 468, 487 (1852).

Importantly, under the doctrine, strict liability is not absolute. Instead, an injured party "must prove some fault, albeit on the part of the operator, which is then imputed to the owner." Burch, 864 So. 2d at 470. Liability is ascribed "to an owner even when the operator disobeys restrictions on the use of the vehicle." Id. Thus, the entrusting owner is rendered liable "no matter where the driver goes, stops, or starts." Boggs v. Butler, 176 So. 174, 176 (Fla. 1937).

Although the dangerous instrumentality doctrine "has drawn its fair share of criticism," in the progeny of Southern Cotton, our high court has reiterated the viability of the doctrine. Fischer v. Alessandrini, 907 So. 2d

5

569, 570 (Fla. 2d DCA 2005). Writing for the court in <u>Kraemer v. General Motors Acceptance Corp.</u>, 572 So. 2d 1363, 1365 (Fla. 1990), Justice Grimes justified its continuing application in the following manner:

> The dangerous instrumentality doctrine seeks to provide greater financial responsibility to pay for the carnage on our roads. It is premised upon the theory that the one who originates the danger by entrusting the automobile to another is in the best position to make certain that there will be adequate resources with which to pay the damages caused by its negligent operation.

While the contours of the doctrine have since been refined, the essential articulation remains unchanged. The owner of a dangerous instrumentality who entrusts its use to another is liable for damages caused by the negligence of the operator. As noted by Justice Grimes, this rule "has been applied with very few exceptions." <u>Id.</u> Indeed, reported Florida Supreme Court decisions expressly identify but three. One who voluntarily entrusts his or her vehicle to a repair service is not liable for injuries caused by the negligence of an employee of the service, so long as the owner does not exercise control over the injury-causing operation of the vehicle and is not otherwise negligent. <u>See</u> <u>Castillo v. Bickley</u>, 363 So. 2d 792, 793 (Fla. 1978). Similarly, a breach of custody amounting to a species of conversion or theft will relieve the owner of liability. <u>See</u> <u>Hertz Corp. v. Jackson</u>, 617 So. 2d 1051, 1053 (Fla. 1993). Lastly, where a vehicle owner possesses bare naked title while another party holds beneficial ownership, vicarious

6

liability will not lie. See Palmer v. R.S. Evans, Jacksonville, Inc., 81 So. 2d 635, 637 (Fla. 1955).

The Florida Legislature has further diminished the reach of the doctrine by declaring that a powered shopping cart in a retail establishment is not a dangerous instrumentality, § 768.093(2), Fla. Stat. (2022), limiting liability to a vessel operator unless the owner is present, § 327.32, Fla. Stat. (2022), limiting the liability of a lessor of an automobile subject to registration for operation on public roads, depending on the duration of the lease, § 324.021(9)(b)1., 2., Fla. Stat. (2022), and, finally, limiting the liability of owners who are natural persons and lend their car to any permissive user, § 324.021(9)(b)3., Fla. Stat. Additionally, in 2005, Congress enacted the Graves Amendment, prohibiting states from imposing vicarious liability on car rental companies. See 49 U.S.C. § 30106.

Against these settled principles, we review the ruling on appeal. In determining the doctrine was unavailable under the factual circumstances at hand, the trial court engaged in a two-fold analysis. The court first determined that certain statutory provisions designed to insulate crime victims from "further damage from the criminal conduct and maximize the potential for recovery," Bd. of Regents v. Taborsky, 648 So. 2d 748, 754 (Fla. 2d DCA 1994), estopped Mr. Sager from arguing his injuries were the result

7

of negligence and then concluded that the weapon-like use of the motor vehicle shielded Ms. Blanco from vicarious liability under the dangerous instrumentality doctrine.  We examine the respective findings, in turn.

Section 772.14, Florida Statutes, located within the Civil Remedies for Criminal Practices Act, provides, in relevant part:

> A final judgment or decree rendered in favor of the state in any criminal proceeding concerning the conduct of the defendant which forms the basis for a civil cause of action under this chapter . . . shall estop the defendant in any action brought pursuant to this chapter as to all matters as to which such judgment or decree would be an estoppel as if the plaintiff had been a party in the criminal action.

Section 775.089(8), Florida Statutes, which is part of the Florida Criminal Code, similarly reads:

> The conviction of a defendant for an offense involving the act giving rise to restitution under this section shall estop the defendant from denying the essential allegations of that offense in any subsequent civil proceeding.  An order of restitution hereunder will not bar any subsequent civil remedy or recovery, but the amount of such restitution shall be set off against any subsequent independent civil recovery.

Both statutes clearly and unambiguously preclude a criminal defendant from denying the essential allegations of his or her conviction in a related civil trial. Neither provision, however, places an equivalent restriction on the injured victim.  "The plain intent of these statutes is to eliminate the common law requirement of identity of parties for collateral estoppel to be used offensively

8

in a civil . . . suit." Stafford v. Don Reid Ford, Inc., 920 So. 2d 791, 793 (Fla. 5th DCA 2006). Accordingly, we conclude the trial court erred in concluding that the statutes operated defensively to prevent Mr. Sager from arguing his injuries were the result of negligence or advancing any other factual theory that draws support from the evidence. See Sun Chevrolet, Inc. v. Crespo, 613 So. 2d 105, 107 (Fla. 3d DCA 1993) (holding that section 775.089(8), Florida Statutes, "applies to a criminal defendant only" and cannot be used "to exercise collateral estoppel offensively").

Further, to the extent the trial court read Burch as imposing a blanket prohibition on vicarious liability claims premised upon the weaponization of the dangerous instrumentality, the analysis was slightly incomplete. In Burch, the driver of the vehicle dropped his girlfriend and her friend off at a nightclub. 864 So. 2d at 468. When he returned later to retrieve them, he observed both women entering another vehicle. Id. He then pursued the vehicle, committing numerous traffic violations along the way. Id. at 468–69. The lead vehicle crashed into a tree, killing one occupant and severely injuring the other two. Id. at 469. Although the driver denied he intended to cause harm, he was subsequently convicted of willful or wanton reckless driving. Id. The trial court concluded that the degree of culpability of the driver was greater than negligence; thus, the vehicle owner could not be

9

found vicariously liable under the dangerous instrumentality doctrine.  Id. at 468.

In determining the propriety of the trial court's ruling, the Fifth District Court of Appeal first examined Caetano v. Bridges, 502 So. 2d 51 (Fla. 1st DCA 1987) and then closely scrutinized the underpinnings of the dangerous instrumentality doctrine.  See Burch, 864 So. 2d at 469–71.  In Caetano, the driver borrowed a car and drove to a location to search for her boyfriend.  502 So. 2d at 52.  She soon observed him in the company of two women.  Id.  As she drove away, she veered toward her boyfriend.  Id.  Her boyfriend and one of the women sustained injuries.  Id.

The injured woman filed suit against both the driver and vehicle owner.  The trial court granted summary judgment as to liability in favor of the injured woman.  Id.  The vehicle owner appealed.  The appellate court reversed, finding that the dangerous instrumentality doctrine does not apply when an "operator is involved in intentional misconduct which is not foreseeable."  Id. at 53.  Because the evidence was in dispute below as to whether the driver intended to injure the woman, summary judgment against the owner was therefore improper.  Id.

The Burch court first noted that this legal conclusion was unelaborated, and the phrase "intentional misconduct" is susceptible to multiple

interpretations.  864 So. 2d at 469.  It then observed that neither a poor manner of driving nor disobedience historically absolved an owner of liability under the dangerous instrumentality doctrine.  Id. at 471; see Anderson v. S. Cotton Oil Co., 74 So. 975, 978 (Fla. 1917) (imputing liability to owner where driver engaged in an unauthorized frolic); Susco Car Rental Sys. of Fla. v. Leonard, 112 So. 2d 832, 836 (Fla. 1959) (finding owner liable when vehicle is misused); Orefice v. Albert, 237 So. 2d 142, 144 (Fla. 1970) (same); Jordan v. Kelson, 299 So. 2d 109, 111 (Fla. 4th DCA 1974) (same).  In doing so, it echoed the words of our high court in Susco Car Rental:

> Where dangerous instrumentalities are utilized then, contrary to ordinary master-servant law, with practical unanimity, the courts hold the master liable for damages caused thereby, even though the servant, who has the sole custody and control thereof, is at the time acting **willfully, wantonly, and in disobedience** to his master's order . . . the public safety demands that he shall be answerable for the exercise of his servant's judgment.  This underlying theory is equally applicable to the field of bailment.  If the owner of such a vehicle cannot, in the performance of his primary duty to the public to see that it is used in a safe and proper manner, substitute or delegate such duty to a servant, then neither can he by contract substitute a bailee, except, of course, as between the parties to such contract.

Burch, 864 So. 2d at 470–71 (quoting Susco Car Rental, 112 So. 2d at 836–37).[2] Drawing upon these principles, along with the basic tenet that vicarious

---

[2] In adopting the dangerous instrumentality doctrine, the Florida Supreme Court appears to have explicitly encompassed certain quasi-intentional acts within the ambit of liability.  See S. Cotton, 86 So. at 634 ("[T]he courts hold

11

liability is imposed by mere reason of the consensual entrustment of the vehicle in the hands of the driver, the Burch court declined to adopt a per se distinction between negligent, quasi-intentional, and intentional conduct.

The court next considered whether the weapon-like use of a vehicle should be distinguished from other acts. The court observed that, at common law, strict liability for ultrahazardous activity did not allow for the imposition of liability "when an implement or machine [was] used for a purpose different than that for which it is designed, such as when a hammer [was] used as a deadly weapon." Burch, 864 So. 2d at 472. Then, noting

---

the master liable for damages caused thereby, even though the servant, who has the sole custody and control thereof, is at the time acting willfully, wantonly, and in disobedience to his master's order."); Alamo Rent-A-Car, Inc. v. Mancusi, 632 So. 2d 1352, 1357 (Fla. 1994) ("Moreover, the language specifically reflects the intent to include certain intentional conduct by the inclusion of the words 'willful and wanton.'"); Prosser & Keeton on the Law of Torts, § 34 at 213 (5th ed. 1984) ("The usual meaning assigned to 'willful,' 'wanton,' or 'reckless,' according to taste as to the word used, is that the actor has intentionally done act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm will follow."); Good Samaritans & Liability for Medical Malpractice, 64 Colum. L. Rev. 1301, 1309 (Nov. 1964) ("[T]he contradictory term 'willful and wanton' negligence, vaguely denotes quasi-intentional conduct that is qualitatively different from [mere] negligence."); see also § 324.021(9)(b)3., Fla. Stat. ("The owner who is a natural person and loans a motor vehicle to any permissive user shall be liable for the operation of the vehicle or the acts of the operator . . . ."); Farrey v. Bettendorf, 96 So. 2d 889, 895 (Fla. 1957) ("Intentionally not looking where one is going when operating a dangerous instrumentality is essentially the same as operating such dangerous instrumentality with the eyes of the operator closed.").

that "[o]peration of a vehicle falls within the strict liability doctrine because a vehicle is dangerous to others when used for its 'designed purpose,'" the court determined that "[t]he liability undertaken by the [entrusting] owner of a vehicle" solely "relates to the potential for injury when it is used as a conveyance." Id. The court therefore concluded that when a vehicle is intentionally weaponized, vicarious liability against the owner is ordinarily improper. Id.

That was not, however, the end of the analysis. The Burch court crafted a narrow exception to this general rule, holding that "[w]hen a vehicle causes harm because it is used like a weapon, a purpose for which it is not designed, . . . the doctrine does not impose liability, *unless its use in this manner is reasonably foreseeable.*" Id. (emphasis added). In other words, the court determined that weapon-like use of the motor vehicle will not give rise to liability under the dangerous instrumentality doctrine unless and until foreseeability is established.

As relevant to the resolution of this appeal, we find some aspects of Burch persuasive and consistent with our own precedent. Indubitably, weapon-like use with the intent to cause harm constitutes a marked departure from the intended use of a motor vehicle. Under such circumstances, the resultant harm is not inherent to the operation of the

13

vehicle, and imputing liability to the owner fails to withstand intellectual muster. See Restatement (First) of Agency § 238(d) (1933) ("[T]he mere entrusting of even a highly dangerous instrument to a servant does not cause the master to be liable for injuries caused by the servant's using it in sport or revenge . . . ."). Conversely, where the weaponization of the vehicle is foreseeable, the departure from the expected and designed use is reasonably anticipated, and the underpinnings of the doctrine militate in favor of application. See Sun Chevrolet, Inc., 613 So. 2d at 107 (citing Caetano 502 So. 2d at 53) ("[The] owner of a vehicle [is] not responsible if the operator is involved in intentional misconduct which is not foreseeable.").[3]

---

[3] Crucially, the issue before this court in Sun Chevrolet was *not* whether the vehicle owner was strictly liable under the dangerous instrumentality doctrine because the driver's culpability was greater than mere negligence. On the contrary, in that case, the owner of a vehicle involved in a fatal accident argued there was record evidence that the driver was not at fault *at all*, via negligence or intentional misconduct, and that the accident was instead caused by an equipment malfunction, which may relieve both driver and owner of liability to the decedent's estate. 613 So. 2d at 107. This court held that "[s]ince a genuine issue of material fact exists as to whether the accident which caused the decedent's death was the result of [the driver]'s negligence, the trial court's order granting summary judgment based on the dangerous instrumentality doctrine must be reversed." Id. We do not read Sun Chevrolet as imposing strict liability to vehicle owners under the dangerous instrumentality doctrine only in those cases where the driver's conduct is *merely negligent*, nor do we believe it conflicts with Burch. See Sun State Ford, Inc. v. Burch, 889 So. 2d 778, 778 (Fla. 2004) (determining "there is no actual conflict" where petitioner's brief asserted conflict between Burch and Sun Chevrolet, Caetano, and Orefice).

14

In this case, the parties sharply dispute foreseeability, and the facts have not yet been crystalized in the proceedings below. Further, there has not been a factual determination as to whether Mr. Blanco intentionally weaponized the vehicle with the intent to cause harm or merely acted in a negligent manner. Consequently, summary judgment was prematurely entered.

Finally, Mr. Sager asserts the trial court erred in prohibiting him from proceeding on his alternative claim of negligent entrustment. It is well-established that the law allows the promulgation of alternative theories of recovery. See Hines v. Trager Constr. Co., 188 So. 2d 826, 830 (Fla. 1st DCA 1966); Hendry Tractor Co. v. Fernandez, 432 So. 2d 1315, 1317 (Fla. 1983). Any potential prejudice stemming from the negligent entrustment claim may be mitigated by incorporating appropriate procedural safeguards. See Trevino v. Mobley, 63 So. 3d 865, 867 (Fla. 5th DCA 2011) ("We remain mindful of the prejudice problems pointed out in Clooney [v. Geeting, 352 So. 2d 1216 (Fla. 2d DCA 1977)]. However, there are a number of procedural mechanisms that can be used to ensure that a defendant's past driving record is excluded from the jury's determination of the driver's

15

negligence, but included in the jury's determination of the vehicle owner's culpability for negligent entrustment. The type of three-phase trial agreed to by the parties in the present case is just one example."). Accordingly, we reverse and remand for reinstatement of both counts contained in the complaint.

Reversed and remanded.

SCALES, J., concurs.

LINDSEY, J., specially concurring in result only.

The issue in this appeal is whether Appellee Madalina Blanco can be held vicariously liable under Florida's unique dangerous instrumentality doctrine for her son's intentional misuse of her vehicle. I agree intentional misuse of a vehicle precludes vicarious liability unless the intentional misuse is reasonably foreseeable. However, I respectfully dissent from the majority's adoption of the narrow exception to the dangerous instrumentality doctrine set forth in Burch v. Sun State Ford, Inc., 864 So. 2d 466 (Fla. 5th DCA 2004) because doing so is unnecessary to resolve the issue on appeal.

Florida's dangerous instrumentality doctrine is not a product of legislation; it is a creature of judicial decision. See Burch, 864 So. 2d at 470 ("The only state to have adopted the doctrine by judicial decision, Florida's doctrine is unique and has few exceptions."). In Southern Cotton Oil Co. v. Anderson, 86 So. 629 (Fla. 1920), the Florida Supreme Court held that a motorcar is a dangerous instrumentality when operated on public highways, and therefore, an employer is strictly liable for an employee's negligent operation of an employer's vehicle, even when the employee acts outside the scope of employment.[4] "Florida is apparently the only state that imposes

---

[4] The Supreme Court adopted the theory that an automobile is a dangerous instrumentality even though this argument was not raised in the trial court. See Southern Cotton, 86 So. at 637 (Ellis, J., dissenting) ("The majority

strict vicarious liability on the owner of an automobile who entrusts it to another, and the doctrine has drawn its fair share of criticism." Fischer v. Alessandrini, 907 So. 2d 569, 570 (Fla. 2d DCA 2005).

Following Southern Oil, courts in this state have come up with various policy justifications for Florida's unique dangerous instrumentality doctrine. Many of these justifications stem from rental car cases, including Burch, which the majority so heavily relies on. But it should be noted that these cases have been preempted by federal law. In 2005, Congress passed the "Graves Amendment," which "called for preemption and abolition of any state statute or common law precedent that held rental or leasing agencies vicariously liable for their driver's negligence, except when the owner itself was negligent or engaged in criminal wrongdoing." Brent Steinberg, The Graves Amendment: Putting to Death Florida's Strict Vicarious Liability Law, 62 Fla. L. Rev. 795, 796 (2010) (citing 49 U.S.C.A § 30106 (2006)).

I recognize that the controlling case law in this District holds that "the owner of an automobile who allows his vehicle to be driven on the open road

---

opinion upholds the verdict and judgment upon the theory that one who permits another to use an instrument dangerous in its operation is liable in damages for the negligent operation of such instrument, notwithstanding the user was engaged upon an independent errand of his own. But that is not the theory upon which the declaration was framed, nor the cause tried. That was not the case made by the pleadings, nor was it the principle upon which the charges given by the trial court to the jury were framed.").

is liable only if the driver is *negligent*." Sun Chevrolet, Inc. v. Crespo, 613 So. 2d 105, 107 (Fla. 3d DCA 1993) (citing Caetano v. Bridges, 502 So. 2d 51 (Fla. 1st DCA 1987)). In support of its holding, Crespo relied on Caetano, which similarly holds that the owner of an automobile "is liable only if the operator is *negligent* under the circumstances and is not accountable if the operator is involved in intentional misconduct which is not foreseeable." 502 So. 2d at 53. In short, Crespo cuts off vicarious liability under the dangerous instrumentality doctrine when a driver engages in intentional misconduct that is not foreseeable.

This case can easily be decided under Crespo. Here, the driver's alleged intentional misconduct is his weaponized use of the vehicle. Such intentional misuse would unquestionably cut off vicarious liability as to the driver unless the intentional misuse were foreseeable. Because the parties dispute foreseeability, I concur that summary judgment was prematurely entered.

But I cannot join the majority's suggestion, stemming from Burch, that weaponized use of a vehicle is the only type of intentional misuse that cuts off vicarious liability against the owner. Neither party has asked us to adopt this narrow exception from Burch nor is doing so necessary to resolve the issue before us. I also dissent from the majority's extensive discussion of

19

policy, as this is better suited for the Legislature. <u>See</u> <u>Southern Cotton</u>, 86 So. at 637 (Ellis, J., dissenting) ("There may be cogent reasons why the Legislature should impose upon the owners of automobiles the additional liability for injuries caused by the machine when carelessly operated by any person to whom the owner may have intrusted it for the former's pleasure, and not the owner's interest; but until the Legislature, in the exercise of police power for the public safety, so declares, the court should not outstrip the lawmaking body in its effort to meet public opinion.").

Accordingly, though I agree this case should be reversed and remanded for factual determinations, I see no reason this appeal cannot be decided under <u>Crespo</u>, which is the controlling case law in this District. I otherwise decline to join the majority's opinion, including but not limited to, its adoption of <u>Burch</u>.