102 So.2d 574 (1958)
FLORIDA STATE RACING COMMISSION and Clarence H. Ratliff, John R. Ring, J.D. Johnson, C. Sweet Smith, Jr., and Warren H. Toole, Jr., as and constituting the Florida State Racing Commission, and Seminole Park & Fairgrounds, Inc., a Florida corporation, Appellants,
v.
Leon V. McLAUGHLIN and Sanford-Orlando Kennel Club, Inc., a Florida corporation, Appellees.
Supreme Court of Florida.
March 26, 1958.
Rehearing Denied May 2, 1958.
*575 Richard W. Ervin, Atty. Gen., George E. Owen, Asst. Atty. Gen., and George F. Gilleland, Miami, for Florida State Racing Commission.
Turnbull & Senterfitt, Orlando, and Paty, Downey & Daves, West Palm Beach, for Seminole Park & Fairgrounds, Inc.
W.J. Steed, James A. Urban, Orlando, and Carl T. Hoffman (of Hoffman, Kemper & Johnston), Miami, for appellees.
DREW, Justice.
Leon V. McLaughlin, a citizen, resident, taxpayer and elector of Seminole County, and the Sanford-Orlando Kennel Club, Inc., a Florida corporation, engaged in the business of operating a race track in Seminole County under a permit from the State of Florida, filed a suit for declaratory decree against the Florida State Racing Commission and the individual members thereof and Seminole Park & Fairgrounds, Inc. The suit was instituted for the purpose of securing a judicial interpretation of certain statutes of the State relating to the distance required between plants holding racing permits; to secure a determination that a permit issued to Seminole Park & Fairgrounds, Inc., one of the defendants, for a harness racing track, was issued illegally; and to enjoin the Racing Commission from issuing said permit or fixing any racing dates. Relief also was sought with reference to an election held in Seminole County which it was alleged was conducted in an illegal and unlawful manner. The defendants appeared in said cause and filed motions to dismiss and motions to strike portions of the complaint. Thereafter the matter was set for final hearing before the circuit judge on the motions to dismiss and strike. At the final hearing the respective parties stipulated that "this case has been restricted to a consideration of a single question:
"Does Section 550.05, Florida Statutes [F.S.A.], forbid the operation of a harness horse racing track within one hundred miles of a dog racing plant?"
Pursuant to such stipulation and after final hearing the court entered a final decree, the pertinent portions of which are as follows:
"The pertinent part of the statute reads as follows:
"`* * * No permit shall be issued by the racing commission or voted upon in any county to conduct running horse races, harness horse races or dog races at a location within one hundred miles road travel via most practicable route of another location for which a permit has been issued and a racing plant located * * *.'
"It is elementary that the function of the Court is to ascertain and give effect to the Legislative intent in enacting a statute.
"In applying this principle certain rules have been adopted to guide the process of judicial thinking. The first of these is that the Legislature is conclusively presumed to have a working knowledge of the English language and when a statute has been drafted in such manner as to clearly convey a specific meaning the only proper function of the Court is to effectuate this legislative intent.
"This rule is subject to the qualification that if a part of a statute appears to have a clear meaning if considered alone but when *576 given that meaning is inconsistent with other parts of the same statute or others in pari materia, the Court will examine the entire act and those in pari materia in order to ascertain the overall legislative intent.
"When construing a particular part of a statute it is only when the language being construed in and of itself is of doubtful meaning or doubt as to its meaning is engendered by apparent inconsistency with other parts of the same or a closely related statute that any matter extrinsic the statute may be considered by the Court in arriving at the meaning of the language employed by the Legislature.
"Nothing is more essential to the proper recognition of the legislative function in government or more conducive to avoidance of inadvertent invasion of that field by the courts than the proposition, often announced, that the courts may not go outside the statutes themselves to seek reasons for doubt as to the meaning of a statute and then use these extraneous reasons as a basis for giving a statute a meaning different from that conveyed by the language chosen by the Legislature to express its intent.
"Applying these rules to the case before the Court no conclusion can be reached but that the statute forbids the granting of a permit for the operation of a harness horse racing track within one hundred miles of a previously licensed and operating dog racing track.
"The quoted language conveys a clear, definite and specific meaning. The phrase `a location for which a permit has been issued and a racing plant located' is in no sense ambiguous. A racing plant is a place where racing is conducted and at which the necessary facilities have been provided. The term is not limited to any particular type of racing. The use by the Legislature of the comprehensive term indicates an intent to include everything embraced within the term. Since `racing plant' includes a running horse racing plant, a harness horse racing plant and a dog racing plant, the phrase, standing alone, should be construed as though each of these types of racing plants had been specifically enumerated. There is nothing in the context which suggests a different meaning. On the contrary the simplicity with which a different meaning could have [been] indicated by the addition of the words `of the same kind' suggests that it was not the legislative intent to convey this different meaning.
"The plain language of the quoted portion of the statute does not appear to be in any way inconsistent with the remainder of the statute. Chapter 550, Florida Statutes [F.S.A.], deals with `dog racing and horse racing.' This includes running horse racing as well as harness horse racing. Some portions of this chapter relate exclusively to one type of racing. Others relate to all types. The first paragraph of Section 550.05 refers to racing meets and racing. Clearly this embraces all types of racing. When later in the same section the term `racing plant' is employed, the logical inference is that all racing plants were intended to be included. Since Chapter 550 deals with all types of legalized racing and general terms used elsewhere in the chapter must be construed as embracing all types of racing, this is harmonious rather than inconsistent with the idea that the general language under consideration should be given a broad meaning.
"It is obvious that the Legislature intended to prevent the operation of an excessive number of race tracks. The extent of the intended restriction can best be determined from the express language of the statute, giving the Legislature credit for having used this language advisedly.
"What has been said precludes the consideration of the other matters argued. Administrative construction of a statute, the legislative history of its enactment and other extraneous matters are properly considered *577 only in the construction of a statute of doubtful meaning.
"It is, therefore, considered, ordered, adjudged, decreed and declared:
"1. It is not lawful for the Florida State Racing Commission to issue any permit or license to, or assign any dates for the conducting of harness horse races to Seminole Park and Fairgrounds, Inc., with respect to a racing plant located within one hundred miles road travel via most practicable route of the racing plant currently operated by Sanford-Orlando Kennel Club, Inc.
"2. In view of the fact that the State Racing Commission is composed of state officers, no coercive relief will be ordered unless it be made to appear that after entry of this decree, it declines to follow the law as herein pronounced."
We approve the foregoing decree and hereby adopt it as the opinion and judgment of this Court
A reply brief of the appellant, Seminole Park & Fairgrounds, Inc., filed in this Court, raises for the first time the question of whether or not a dog racing corporation and a taxpayer can maintain a suit for declaratory decree to declare null and void a harness horse racing permit issued by the Florida State Racing Commission and ratified by the voters of the county in question. This question was not presented to nor decided by the court below nor was it argued in the original brief of the appellant in this cause.
In urging the consideration of the question raised as it was at such a late time, the appellant, Seminole Park & Fairgrounds, Inc., argues that although the point was not raised in nor considered by the lower court nor argued in the original brief in this Court, it presents a fundamental error which may be raised at any stage of the proceedings and which must be considered in the disposition of this cause. In support of this position the principal reliance is upon the decision of this court in the case of Florida State Racing Commission v. Broward County Kennel Club, Fla. 1955, 77 So.2d 783. But even if the principles there announced are of such breadth as to affect appellees' standing as plaintiffs in this proceeding below (a point we do not decide because unnecessary to the disposition of the appeal), the decision does not constitute a barrier to the determination of this controversy on its merits.
In the instant case, when the matter was presented on final hearing to the trial judge, it was done so upon the agreement of all of the parties that the circuit judge should decide the case upon the sole issue of whether a harness racing track could be lawfully operated within a hundred miles of a dog racing plant. The situation at that time was exactly the same as if the Racing Commission had instituted the action to secure judicial interpretation of the action under discussion, naming as defendants a taxpayer of Seminole County, the Sanford-Orlando Kennel Club, and the Seminole Park & Fairgrounds, Inc. This type of action is clearly contemplated by Chapter 87, Florida Statutes, F.S.A., and is a method commonly resorted to when uncertainties or doubts exist under statutes of this State. Under familiar rules, the parties having invoked the jurisdiction of the Court, they are now estopped to question the power of the Court to enter the decree.
Affirmed.
TERRELL, C.J., and ROBERTS, THORNAL and O'CONNELL, JJ., concur.