QUESTIONS: 1. Do security guards appointed by the board of county commissioners under s. 332.08, F. S., meet the requirements of Federal Aviation Regulation Part 107? 2. Are airport security guards appointed under s. 332.08, F. S., required to meet and comply with the minimum police standards as set forth in s.943.13, F. S.?
SUMMARY: Airport guards or police duly appointed by a board of county commissioners under s. 332.08(2), F. S., are peace officers statutorily vested with the common-law powers of such officers within the geographic limits of the county airport and therefore are subject to the Police Standards and Training Commission and to all applicable terms and provisions of ss. 943.09-943.24, F. S. Such officers, upon being duly certificated by the Police Standards and Training Commission pursuant to s. 943.14(2), would appear to be law enforcement officers within the meaning of part 107.1(e) of the Federal Aviation Regulations if other requirements are met and satisfied. As your questions are interrelated, they will be answered together. Federal aviation regulations require the presence of a law enforcement officer at final passenger screening prior to boarding. Part 107.1(e) of said regulations defines "law enforcement officer" as an armed person authorized to carry and use firearms; vested with a police power of arrest under federal, state, or other political subdivision authority; identifiable by uniform, badge, or other indicia of authority; and assigned the duty of providing law enforcement support for preboard screening aspects of the security programs filed by part 121 certificate holders, foreign air carriers requesting such support and for airport security programs. Section 332.08(2)(a), F. S., provides that a municipality, as defined in s. 322.01(1), F. S., including any county, is authorized to adopt and amend all needful rules, regulations, and ordinances for the management, government, and use of the airports, air terminal facilities, and other properties under its control; to fix by ordinance or resolution penalties for the violation of such rules, regulations, and ordinances; to enforce such penalties in the same manner in which penalties prescribed by other regulations and ordinances of the municipality or county are enforced, i.e., through and by the appropriate police agencies and courts; and to appoint airport guards or police with "full police powers." Section 332.08(2)(b), F. S., provides, inter alia, that where a county operates one or more airports, its regulations for the government thereof shall be by resolution of the board of county commissioners and shall be enforced "as are the criminal laws. Violations thereof shall be a misdemeanor of the second degree, punishable as provided in s.775.082 or s. 775.083." (It is worthy of note that under s. 1(f), Art. VIII, State Const., a noncharter county should enact such regulations by ordinance in the manner prescribed by s. 125.66, F. S.) Cf. s. 125.69 with ss. 775.082(4)(b) and 775.083(1)(e), F. S. The question immediately pending herein is in regard to the legal status, duties, and functions of the airport guards and police so appointed by a county or municipality under s. 332.08(2)(a), F. S. As the statute here under consideration authorizes the adoption and enforcement of needful regulations and ordinances in the same manner in which other regulations, ordinances, and penalties are adopted and enforced by a municipality or county and, with respect to a county, directs that its regulations shall be enforced as are the criminal laws and makes any violation thereof a misdemeanor, it is apparent that the airport police duly appointed by a board of county commissioners are, and serve as, the enforcing or "police" agency of the county within the territorial limits of the airport owned and operated by the county and that the statute bestows complete "police" or enforcement powers on such airport guards or police for the purpose of enforcing such regulations in the same manner as criminal laws, i.e., arrest for violation thereof. Otherwise, the provisions of the statutes providing criminal penalties (misdemeanors), vesting enforcement powers, and generally providing for enforcement of the regulations for the government of the county airport would be for naught. It is an elemental rule of statutory construction to give effect to every part of a statute if reasonably possible; and each part should be construed in connection with every other part so as to produce a harmonious result, Snively Groves v. Mayo, 184 So. 839 (Fla. 1939), and to effectuate the intent and purpose of the statute. Atlantic Coast Line R. Co. v. State, 74 So. 595 (Fla. 1917); American Bakeries Co. v. Haines City, 180 So. 524 (Fla. 1938); Smith v. Ryan, 39 So.2d 281 (Fla. 1949). Therefore, I am of the opinion that such duly appointed county airport guards or police are statutorily empowered to act as the aforementioned enforcement or "police" agency of the county within the territorial limits of the county airport and with complete police or law enforcement powers within the geographic limits thereof. The word "full" as used in s. 332.08(2)(a), F. S., describes the phrase "police powers," has reference to the airport guards or police, and is defined in Black's Law Dictionary, Revised Fourth Edition, at p. 800, to mean: "Abundantly provided, sufficient in quantity or degree, complete, entire, and detailed," and further as "ample; perfect; mature; not wanting in any essential quality." Thus, it is evident that the Legislature granted the whole of such police or enforcement powers to such airport guards or police, including the power to preserve the peace and maintain the public order and the power of arrest, which are common-law powers now vested in peace officers. See s. 901.15, F. S.; Tezeno v. Maryland Casualty Co., 166 So.2d 351, 355 (La. 1964); cf. AGO 072-139; State v. Grant, 216 A.2d 790 (N.H. 1966); State v. Cohen, 158 A.2d 497
(N.J. 1960); People v. Salerno, 235 N.Y.S.2d 879 (Sup. 1962); People ex rel. Lawrence v. Noble, 256 N.Y.S.2d 730 (Sup. 1965). In Wyndham v. U.S., 197 F. Supp. 856 (E.D.S.C. 1961), the court stated that the term "police," as commonly understood, "is so plain and unambiguous that there is no occasion for resorting to rules of statutory interpretation," and that "the Court has no right to look for or impose another meaning." The court then defined the term as "an organized civil force for maintaining order, preventing and detecting crime, and enforcing the laws." Also see Tezeno v. Maryland Casualty Co., 166 So.2d 351, 355-356
(La. 1964), and decisions cited therein.
Jeremy Bentham is quoted in 72 C.J.S., at p. 207, as writing that the police of a state is in general a system of precaution, either for the prevention of crime or of calamities, and that its business may be divided into eight distinct branches, the first of which is "police for the prevention of offenses." Also see Black's Law Dictionary, supra, at p. 1316. It has also been defined as the "enforcement of the law [and] public order," and in a more restricted sense as being "the department of government which is concerned with maintenance of order and enforcement of law;" and the term is particularly applied to "those officers who are appointed for the purpose of the maintenance of public tranquility among the citizens." 72 C.J.S., at p. 207. "Police," as a noun, is defined in Ballantine's Law Dictionary as: The law enforcing department of a state or local government having the duty of maintaining order, detecting crimes, and making arrests. Peace officers. In the broadest sense, inclusive of both administrators and magistrates. (Also see Black's Law Dictionary, Fourth Edition, Police Officer, at p. 1317.) "Peace Officer" is defined in 70 C.J.S., p. 380, as "an officer of the law, a law enforcement officer" and "a conservator of the peace." In 15A C.J.S., pp. 579-580, "peace officer" and "conservator of the peace" are held to be synonymous and are further defined as: A term applied to those who have especial charges, by virtue of their office, to see that the King's peace is kept; a common-law officer whose duties, as such, were to prevent and arrest for breaches of the peace in his presence, but not to arraign and try for them; an officer authorized to preserve or maintain the public peace; an officer who has charge of preserving the peace, as a justice or sheriff. Application of the aforementioned terms and judicial definitions thereof to the instant questions compels the conclusion that the Legislature, in and by enactment of s. 332.08(2), F. S., must have intended, and in fact did intend, to provide for the appointment of airport guards or police statutorily vested with the common-law powers of peace officers and with complete authority or power to enforce, not only the duly adopted regulations for the government of the county airport, but also the criminal laws of the state on and within the geographic limits of the county airport. See s.901.15, F. S., for the arrest powers of a peace officer without a warrant, s. 901.17, F. S., for the method of arrest by a peace officer without a warrant, and s. 901.21, F. S., as to searches of persons so arrested. It is axiomatic that the intent of the Legislature as gleaned from a statute is the law and must be given effect. State v. Knight, 124 So. 461 (Fla. 1929); Florida State Racing Commission v. McLaughlin, 102 So.2d 574 (Fla. 1958); Small v. Sun Oil Co., 222 So.2d 196 (Fla. 1969). Moreover, the Legislature — in employing the language "with full police powers" — is conclusively presumed to have a working knowledge of the English language and to have drafted the statute in such manner as to clearly convey its meaning, and the only proper function of the court is to effectuate such legislative intent. Florida State Racing Commission v. McLaughlin, supra. Section 943.10(1), F. S., applicable to the Police Standards and Training Commission and related statutes in ss. 943.09-943.24, F. S., defines "police officer" as "any person employed full time by any municipality or the state or any political subdivision thereof, whose primary responsibility is the prevention and detection of crime or the enforcement of the penal, traffic, or highway laws of this state." (Emphasis supplied.) Section 943.10(2) defines "employing agency" as "any political subdivision . . . employing police officers as defined in subsection (1)." "Penal laws" are those which deal with offenses against the state and are, in this respect, synonymous with "criminal laws." See Black's Law Dictionary, p. 1290. In view of the foregoing discussion, it is apparent that the duties of the airport guards or police here under consideration fall well within the definition of "police officer" in s. 943.10(1), F. S., and that the county is the employing agency as defined in s.943.10(2), F. S., thus subjecting said person and the county to the terms and provisions of the Police Standards and Training Laws (ss. 943.09-943.24, F. S.). Section 790.051, F. S., exempts "law enforcement officers," which term is defined in s. 790.001(8)(a), F. S., to include all officers or employees of the political subdivisions of the state possessed with the authority to make arrests (as I have hereinabove concluded these airport police are) and in s. 790.001(8)(e) to include all peace officers (in which status stand the airport police under s. 332.08(2), F. S.) from the licensing and penal provisions of Ch. 790, F. S., in regard to the possession and carrying of firearms by such officers when acting at any time within the scope or course of their official duties or when acting at any time in the line of, or performance of, duty. Also see s. 790.25(3)(d), F. S., excepting from the provisions of ss. 790.05 and 790.06, F. S., "policemen . . . and other peace and law enforcement officers" and making it lawful for such persons to own, possess, and lawfully use firearms and other weapons for lawful purposes. Section 776.05, F. S., inter alia, authorizes a "law enforcement officer," which term is defined in Ballantine's Law Dictionary, p. 712, so as to include peace officers (and thus the airport guards and police here under consideration), to use "any force" which he reasonably believes to be necessary to defend himself or another from bodily injury while making an arrest or when necessarily committed in arresting felons fleeing from justice. Thus, the county airport guards or police about whom you inquire are authorized to use any force, including deadly force, reasonably necessary to effectuate a lawful arrest and are exempted from the licensing and penal provisions of Ch. 790, supra, in regard to the possession and lawful use of firearms and other weapons for lawful purposes when acting within the scope or course of their official duties. Further, should such airport guards or police be identifiable by uniform, badge, or other indicia of authority, and should they be assigned the duties set forth in paragraph 4, part 107.1(e) of the Federal Aviation Regulations, it would appear that the terms and provisions of said regulation are satisfied by the appointment of said guards or police under s. 332.08, F. S., and the issuance of a certificate of compliance by the Police Standards and Training Commission. See ss. 943.12(1), 943.13, 943.14, and 943.19, F. S. Therefore, in consideration of all of the foregoing, I am of the opinion that airport guards or police appointed under s. 332.08(2), F. S., are subject to the Police Standards and Training Commission and to all applicable terms and provisions of ss. 943.09-943.24, F. S.