Joan M. Heggen Secretary, Department of Community Affairs Tallahassee
QUESTIONS:
1. In the event that a county has not adopted a comprehensive plan, in accordance with the Local Government Comprehensive Planning Act, by the statutory deadline, the act requires the Administration Commission to adopt such a plan to be effective within that county. Once such a plan has become effective, who has the authority to amend it; who serves as the local planning agency; and who is responsible for the 5-year assessment and evaluation reports?
2. If a local governing body has not adopted a comprehensive plan by the statutory deadline, may it adopt a plan after that date?
3. What effect do existing land development regulations have in a jurisdiction which has not adopted a plan by the statutory deadline?
4. If the governing body of a municipality adopts a plan which contains less than all the required elements, would such noncompliance render those elements adopted invalid, and, if not, would the county be required to adopt a plan covering the missing elements and what adoption procedure should the county follow?
5. May the State Land Planning Agency charge a county for the preparation of a plan when the county has designated a local planning agency but has not adopted a plan?
6. Must a local governing body strictly comply with the adoption timetable provided for in the statute?
SUMMARY:
In the event that a unit of local government fails to adopt a comprehensive plan before the statutory deadline and the plan adopted by the county or the Administration Commission becomes effective within that jurisdiction, that unit of local government still has the right to amend that plan, and its designated local planning agency should perform all the functions assigned to that body. A comprehensive plan adopted by a local government subsequent to the statutory deadline, but prior to the adoption by another governmental body of a substitute plan, is presumptively valid; however, once a substitute plan has been adopted for a noncomplying jurisdiction, the governing body of that local government may no longer adopt its own plan but may amend the one adopted for it. Existing land development regulations in a jurisdiction which has not adopted a plan are effective until a plan becomes effective in that jurisdiction, at which time inconsistent provisions in the plan would control over the land-use regulations. A comprehensive plan adopted by the governing body of a municipality which contains less than all the required elements is presumptively valid; the county plan will govern in the municipality only with respect to those elements not adopted by the municipality; and the county need follow no specific adoption procedures before its plan becomes effective within the noncomplying municipality. The State Land Planning Agency may only charge a nondesignating unit of local government a fee for assuming the responsibilities of its local planning agency. The governing body of a unit of local government should comply strictly with the adoption time sequence outlined in the Local Government Comprehensive Planning Act.
STATEMENT OF FACTS:
During the 1975 Legislative Session, the Legislature adopted the Local Government Comprehensive Planning Act (hereinafter the act or LGCPA), codified as ss. 163.3161-163.3211, F. S. One of the stated goals of that act is to empower and encourage units of local government to guide and control future development within their jurisdictions. See s. 163.3161(2). To accomplish this goal, the act requires each unit of local government (defined in the act as including any county, municipality, special district, or local government entity with land development regulatory power) to prepare and adopt a comprehensive plan meeting certain statutory standards by July 1, 1979. Section 163.3167(2) and (3). Two 1-year extensions may be granted upon application and upon a showing that good faith efforts are being made to meet the statutory requirements. Section 163.3167(7). Once a comprehensive plan has been adopted, it has the effect of law, and all development undertaken within that jurisdiction must be consistent with the plan. Sections 163.3161(5) and 163.3194(1). See AGO 079-88. In the event that a unit of local government has not adopted a plan by the statutory deadline, the act provides that that county plan (in the event that the noncomplying local government is either a municipality, special district, or other local government entity) or a plan adopted by the Administration Commission at the recommendation of the State Land Planning Agency (in the event the noncomplying local government is a county) shall become effective within that jurisdiction. Section 163.3167(4) and (5). You have indicated that considerable confusion has arisen concerning certain interpretations of the LGCPA, and, as the Department of Community Affairs has certain responsibilities under the act (e.g., it is designated as the State Land Planning Agency), you have asked that I issue an opinion clarifying some of these responsibilities.
AS TO QUESTION 1:
The LGCPA expressly requires each county (as well as each municipality, special district, and local governmental entity with land development regulatory powers) to prepare and adopt a comprehensive plan meeting certain statutory requirements by July 1, 1979, unless it has been granted an extension as provided in s.163.3167(7), F.S. In the event that a county fails to adopt a plan for whatever reason before the statutory deadline, the act authorizes the State Land Planning Agency (the Department of Community Affairs) to prepare a plan for that county and to recommend its adoption to the Administration Commission. Your first question relates generally to who has the responsibility for the plan after its adoption by the Administration Commission.
This question has only two possible answers. The first is that the Administration Commission, once it has adopted a comprehensive plan for a local government, must assume all responsibility for that plan forever after. The second is that the individual local government, once a comprehensive plan has been adopted, is thereafter responsible for its evaluation, assessment, modification, or amendment. Under our State Constitution, the right to legislate on strictly local issues has largely been delegated to the governing bodies of municipalities and counties.See ss. 1 and 2, Art. VIII, State Const. The Legislature, of course, retains the right to legislate on statewide issues and to require uniformity with respect to the substance and procedure of local ordinances. In this regard, while the LGCPA requires counties, municipalities, and certain other units of local government to adopt comprehensive plans meeting certain minimum requirements, that act affords those local governments the initial opportunity to plan for their own growth and development. It is only in the event that they fail to adopt a plan in the first place that the Administration Commission is given any power to adopt one in their stead. And while the LGCPA specifically authorizes the Administration Commission to `adopt' comprehensive plans for noncomplying counties, nowhere does the act assign that commission any further responsibilities for noncomplying counties. To begin with such a contingent grant of power to the Administration Commission and to extrapolate from it that local governments are to be perpetually divested of their power to legislate on matters of such enormous local concern would be unsupportable on my part.
Section 163.3187, F. S., provides that the procedure for amending an adopted comprehensive plan `shall be as for the original adoption . . . .' The responsibility for adopting a comprehensive plan initially rests, of course, with the governing bodies of the individual local governments. Consequently, in the absence of any express assignment by the Legislature to the Administration Commission of powers otherwise vested in the governing bodies of local governments, I must assume that the power to amend a plan rests solely with the individual local governments. Thus, should a county fail to adopt a comprehensive plan before the statutory deadline, the Administration Commission will adopt a plan to be effective within that county. The county is not denied the right to alter the plan, however, and may do so by going through the prescribed amendment process.
Section 163.3167(8), F. S., requires each unit of local government defined in the act to designate by July 1, 1976 (or by July 1, 1977, if a 1-year extension has been granted), a local planning agency. That subsection further provides that, if the required designation has not been made by the deadline, the appropriate county land planning agency or the State Land Planning Agency shall assume the responsibilities of the local planning agency until such time as the designation is made. I understand from discussions with your office that all designations have been made. Consequently, it is my opinion that the designated local planning agency should perform all functions assigned by the LGCPA to that agency, even in those noncomplying counties for which the Administration Commission adopts a comprehensive plan. Included among these responsibilities is the evaluation and appraisal of the comprehensive plan at least once every 5 years. Section163.3191, F. S.
AS TO QUESTION 2:
Your second question relates to whether a local governing body may adopt a comprehensive plan after the statutory deadline has passed. I believe that the answer to this question is governed by the provisions of s. 163.3167(4), (5), and (6), F. S. The first of these subsections provides that, if a municipality, special district, or other governmental entity within a county has not adopted a comprehensive plan before the statutory deadline, `the comprehensive plan of the county in which such municipality or special district or local governmental entity is situate shallgovern.' (Emphasis supplied.) It goes on to provide that the county has 1 year to review to the noncomplying local government the specific application of its plan. In the event that a county has not adopted a plan, subsection (5) requires the State Land Planning Agency to prepare a plan for that county as well as for any noncomplying local governments therein and to recommend its adoption to the Administration Commission. Subsection (6) relates only to municipal corporations established after July 1, 1975, and grants them 3 years from the date of their incorporation to adopt a comprehensive plan meeting the requirements of the LGCPA. Until such plan is adopted, the county plan would control unless there is no county plan, in which case the State Land Planning Agency is again charged with the responsibility of drafting a plan.
It seems to me that the significance of these detailed contingency provisions is that the Legislature was very emphatic about ensuring that there would be a comprehensive plan for future development in effect in every jurisdiction in Florida as soon as possible after July 1, 1979. The LGCPA clearly grants the governing bodies of the individual local governments the initial opportunity to draft such plans. On the other hand, it just as clearly sets a time limit for such compliance and, once that date has been exceeded, reassigns the initial planning responsibility to another governmental body. Should that other governmental body adopt a plan to be effective within the noncomplying jurisdiction, there is no provision in the act which expressly permits the noncomplying government to then adopt its own plan to supersede the existing plan. This would seem to imply that, once a plan becomes effective within a jurisdiction, whether it has been adopted by the governing body of that jurisdiction or some other governmental body, it is the comprehensive plan for that unit of government and `shall govern' (s. 1963.3167(4), F. S.) until amended as provided in s. 163.3187, F.S. Of course, there is nothing to prevent a noncomplying local government from utilizing the amendment process to, in effect, adopt its own plan, and I see no problem with a noncomplying local government's proceeding in this fashion.
One further problem area I can foresee in this regard is the situation when a county fails to adopt a comprehensive plan before the statutory deadline has passed. Section 163.3167(5), F. S., provides that in such event the State Land Planning Agency must prepare a plan for that county and submit it to the Administration Commission which is vested with the power to adopt it. The question of the legal effectiveness of a plan completed and adopted by a noncomplying county before the State Land Planning Agency has had time to prepare a plan for that county is not answered by the LGCPA; and I am forced, therefore, to rely on general legal presumptions to resolve this matter. Generally speaking, ordinances adopted by governmental bodies are presumptively valid; and, based on such legal presumption, I would have to assume a plan adopted subsequent to July 1, 1979, but prior to the adoption of any other plan to be legally effective.
AS TO QUESTION 3:
Your third inquiry poses the question of what legal effect existing land development regulations have in a jurisdiction which fails to adopt a comprehensive plan. As provided by the LGCPA and as more fully explained in the two preceding questions, if the governing body of a local government has not adopted a comprehensive plan prior to July 1, 1979, then the plan prepared by either the county in which such government is situate or the plan adopted by the Administration Commission becomes effective within the jurisdiction. Section 163.3194(1), F. S., provides that `[a]fter a comprehensive plan . . . has been adopted in conformity with this act, all development undertaken by, and all actions taken in regard to development orders by, governmental agencies in regard to land covered by such plan . . . shall be consistent with such plan . . . .' That same subsection further provides that all land development regulations enacted or amended thereafter must be consistent with the plan. See s. 163.3194(2)(b), which defines `land development regulations' as including local government zoning, subdivision, building and construction, or other regulations which control the development of land. In AGO 079-88, I concluded that a municipality which has adopted a comprehensive plan may not issue a construction or building permit inconsistent with that plan even if an existing zoning ordinance would permit such land use or construction. I further stated in that opinion that, while the LGCPA contains no timetable for compliance, a local government should move expeditiously to amend its existing zoning ordinances to conform with land-use elements of its comprehensive plan. I believe that the same answer is applicable in the instant situation. Even when a local government has not adopted a plan, the LGCPA clearly provides an alternative procedure for plan adoption by a different governmental unit. And, once a comprehensive plan is effective within that jurisdiction, the act requires all subsequent development to be consistent with that plan regardless of the existing land development regulations. In the event, however, that there occurs a hiatus between the statutory deadline for compliance and the time the county or Administration Commission adopts a plan for a noncomplying jurisdiction, any existing land development regulation would continue to govern land use and the issuance of building permits during that time. This follows from the fact that the act nowhere invalidates previously existing ordinances or regulations. It merely provides that future actions by the governing bodies must be consistent with the adopted plan. Until such a plan is adopted, of course, no plan exists with which actions can be inconsistent; and the only controlling provisions would be existing zoning or building codes.
AS TO QUESTION 4:
Your fourth question relates to the situation in which a local government adopts a comprehensive plan which does not contain each of the elements required by s. 163.3177(5), F. S. You inquire whether the failure to adopt a plan containing all the required elements has the effect of invalidating those elements actually adopted; what action a county should take in the event a municipality adopts a plan which fails to include all the mandatory elements; and what adoption procedure the county must follow.
I regret to advise you that I am unable to say with any certainty what the Legislature intended with respect to a plan which contains less than the required number of elements. On the one hand, certain provisions of the LGCPA appear to contemplate the fact that a governing body may adopt portions or elements of a plan without adopting an entire plan. For example, s. 163.3184(1), F. S., begins by stating `[a]t least 60 days before the adoption by a governing body of a comprehensive plan or element or portionthereof . . . .' (Emphasis supplied.) Likewise, s. 163.3194, F. S., provides in pertinent part `[a]fter a comprehensive plan orelement or portion thereof has been adopted in conformity with this act . . . .' (Emphasis supplied.) The implication of such language is that it is possible to adopt subcomponents of a comprehensive plan. On the other hand, the term `comprehensive plan' is defined in s. 163.3164(2), F. S., as a plan that meets the requirements set out in s. 163.3177, F. S. The requirements set out in the referenced statutory section are the mandatory elements. Thus, the argument can be made that, when s.163.3167(4), F. S., states that when a municipality has not adopted a comprehensive plan by July 1, 1979, the county plan shall govern, it is referring to a plan containing all the required elements.
As a general proposition of law, the ordinances of units of local government, just like state statutes, are presumptively valid. See
City of Miami v. Rosen, 10 So.2d 307 (Fla. 1942), and Seaboard Air Line Railroad Co. v. Hawes, 269 So.2d 392 (4 D.C.A. Fla., 1972). Consequently, should a municipality adopt elements of a comprehensive plan, such elements, as ordinances, would carry a presumption of validity and should be so considered until such time as a court of competent jurisdiction rules otherwise. Thus, in the absence of any legislative direction specifically providing otherwise, I must conclude that such elements would be legally effective. Based on this presumption of legal validity, it would seem to follow that, if a municipality or other local governmental entity adopts a plan containing some but not all of the elements required by s. 163.3177(5), F. S., the county plan would control only with respect to those required elements not adopted.
With respect to what procedures a county must follow in the adoption of such missing elements, I assume you are asking whether the county must follow the same procedures which a municipality or other unit of local government is required by s. 163.3184, F. S., to follow in the adoption of its plan. Foremost among these requirements are the public hearings and review process. My reading of the relevant statutory provisions does not reveal any express requirement in this regard. Specifically, s. 163.3167(4), F. S., provides:
 When a municipality within a county under subsection (2) or when a special district or local governmental entity under subsection (3) has not prepared and adopted a comprehensive plan by July 1, 1979, as required by this act, the comprehensive plan of the county in which such municipality or special district or local governmental entity is situate shall govern. Such county shall have the responsibility to specifically review the application of its comprehensive plan to such municipality or special district or local governmental entity by not later than one year from the date by which such other local government was required to adopt its comprehensive plan. (Emphasis supplied.)
The above-quoted statutory provision appears to contemplate an automatic application of the adopted county plan within the noncomplying jurisdiction without the necessity of any formal adoption procedures. The only action specifically required of the county is that it review the application of its plan to the noncomplying jurisdiction within 1 year from the original date of compliance. Since the statute requires no more than this, I am unable to say that a county would have to go through any formal process, including holding public hearings and submitting its plan for review to the State Land Planning Agency, before its plan becomes effective in the noncomplying jurisdiction.
AS TO QUESTION 5:
You next inquire whether the State Land Planning Agency may charge a noncomplying local government for the cost of preparing its comprehensive plan. You have pointed out that s. 163.3167(9), F. S., permits the State Land Planning Agency to charge anondesignating county (i.e., a county which has failed to designate a local planning agency as provided for in s.163.3167(8)) for the costs incurred by the State Land Planning Agency in assuming the responsibilities of the local planning agency. Primarily, those responsibilities include the preparation of the plan itself. You have also pointed out, however, that every county has designated a local planning agency. Consequently, while the State Land Planning Agency may still be required to prepare a plan for a noncomplying county (i.e., a county which fails to adopt a plan by July 1, 1979), the statute would appear to preclude passing on the cost of this service since such county would have designated a local planning agency.
While I agree with you that this provision, by permitting a county to escape financial liability for preparing its own plan merely by going through the formal designation procedure without any subsequent attempts to prepare or adopt a plan, appears to be inconsistent with the decision to grant the State Land Planning Agency the power to charge a nondesignating county for performing the functions of the local planning agency, I have no power to read that statutory section in any other way. It plainly uses the term `nondesignating county,' and I must assume that that is what the Legislature intended. The Legislature is presumed to know the meaning of words it uses, and the use of a particular word indicates the intention to use that word as it is commonly and ordinarily used and defined. See Thayer v. State, 335 So.2d 815
(Fla. 1976); and see Florida State Racing Commission v. McLaughlin, 102 So.2d 574 (Fla. 1958), in which the Florida Supreme Court quoted the circuit court's decision to the effect that `the Legislature is conclusively presumed to have a working knowledge of the English language and when a statute has been drafted in such a manner as to clearly convey a specific meaning the only proper function of the Court is to effectuate this legislative intent.' Consequently, I must conclude that the State Land Planning Agency has no power to charge a fee of a county which has designated a local planning agency to prepare a comprehensive plan for that county in the event that it fails to adopt its own plan.
AS TO QUESTION 6:
In your final question, you are concerned with how strictly a local government must comply with the adoption timetable provided in s. 163.3184, F. S. That section requires the governing body, at least 60 days before the adoption of its comprehensive plan, to transmit copies of the proposed plan to the State Land Planning Agency; the applicable regional planning agency; the county's local planning agency (provided that the governmental entity itself is not a county); and any other units of local government or governmental agencies requesting such for their review and comments. Section 163.3184(2), (3), and (4), F. S., grants each of these aforementioned planning agencies 60 days in which to review the plan and submit back to the originating governing body their comments and objections. If the governing body receives timely objections, it is required to reply in writing within 4 weeks and `shall take no action to adopt the comprehensive plan or element or portion thereof until 2 weeks have elapsed following the transmittal of the governing body's letter of reply.' Section163.3184(2). You have specifically inquired whether a local government may adopt its comprehensive plan in less than 60 days from the time it transmits its plan to the various agencies for their review; whether, if one of the reviewing agencies timely objects to certain portions or provisions of a comprehensive plan, the governing body may adopt that plan without responding in writing to the stated objections; and whether the governing body may advertise its public hearings to adopt the plan within 2 weeks of submitting its written response to objecting agencies.
As an exordium to your specific questions, I quote from s.163.3161, F. S., the LGCPA's introductory section which states the intent and purpose of the act.
 (4) It is the intent of this act to encourage and assure cooperation between and among municipalities and counties and to encourage and assure coordination of planning and development activities of units of local government with the planning activities of regional agencies and state government in accord with applicable provisions of law. (Emphasis supplied.)
 (6) It is the intent of this act that the activities of units of local government in the preparation and adoption of comprehensive plans, or elements or portions thereof, shall be conducted in conformity with the provisions of this act. (Emphasis supplied.)
The primary purpose of statutory construction is to ascertain legislative intent and to effectuate that intent, for the intent of the Legislature is the law. State v. Williams, 343 So.2d 35
(Fla. 1977), and Small v. Sun Oil Co., 222 So.2d 196 (Fla. 1969). In view of the clearly stated and above-quoted purposes of the LGCPA, I must conclude that local governing bodies should strictly comply with the directions contained in s. 163.3184, F. S., for adoption of the comprehensive plan. This would mean that a local governing body should not adopt its comprehensive plan until `at least 60 days' after it has transmitted it to the designated review bodies. It also means that a local governing body should not adopt its comprehensive plan if it has not yet responded to objections timely filed with it by a reviewing agency. Finally, while the statute precludes a governing body from taking any action to adopt the comprehensive plan within 2 weeks of submitting its reply to the reviewing agencies concerning their objections to the plan, I do not believe that the mere giving of notice of a planned adoption hearing would constitute `action to adopt the plan.' The public hearing itself would clearly constitute action to adopt the plan since the plan could in fact be adopted at the hearing. Notice of a hearing, however, in my opinion constitutes nothing more than a precedent of action and is not forbidden by the act. It should be noted that, while the pertinent provisions of s. 163.3184 are couched in mandatory terms, no coercive measures or penalties are provided to compel strict compliance with the directives of that section; nor are any jurisdictional limitations on the governing bodies of the local governments specified. See generally Lomelo v. Mayo, 204 So.2d 550
(1 D.C.A. Fla., 1967); cf. City of St. Petersburg v. Austin,355 So.2d 486 (2 D.C.A. Fla., 1978).
Prepared by: Percy W. Mallison, Jr., Assistant Attorney General