# Supreme Court of Florida

_____

No. SC17-954
_____

**THE BANK OF NEW YORK MELLON, etc.,**
Petitioner,

vs.

**DIANNE D. GLENVILLE a/k/a DIANE D. GLENVILLE a/k/a DIANE GLENVILLE, et al.,**
Respondents.

September 6, 2018

CANADY, C.J.

This case involves a dispute between the former record owners of certain real property and a subordinate lienholder over surplus funds resulting from a judicial foreclosure sale of the property. The crux of the dispute is whether the subordinate lienholder timely filed its claim to the surplus amount under the provisions of chapter 45, Florida Statutes (2015), governing judicial sales. The statute requires that a claim to surplus funds be filed within "60 days after the sale." The specific issue presented is whether the sixty-day period begins upon the public auction of the property, the clerk's issuance of the certificate of title, or some other event.

This Court has for review *Bank of New York Mellon v. Glenville*, 215 So. 3d 1284, 1285 (Fla. 2d DCA 2017), in which the Second District Court of Appeal concluded that, under section 45.031, the subordinate lienholder's claim was untimely because it was not filed within sixty days of the public auction. In so holding, the Second District certified conflict with *Straub v. Wells Fargo Bank, N.A.*, 182 So. 3d 878, 881 (Fla. 4th DCA 2016), in which the Fourth District Court of Appeal concluded that the sixty-day period does not begin until the clerk issues and files the certificate of title. This Court granted discretionary review based on the certified conflict. This Court has jurisdiction. *See* art. V, § 3(b)(4), Fla. Const.

We conclude that the sixty-day period begins upon the clerk's issuance of the certificate of disbursements—something the clerk is tasked with doing "[o]n filing a certificate of title." § 45.031(7)(a), Fla. Stat. Section 45.032(3), Florida Statutes (2015)—which neither *Glenville* nor *Straub* considered—makes clear beyond any doubt that the sixty-day period begins upon issuance of the certificate of disbursements. Accordingly, we quash *Glenville*. We also disapprove the certified conflict case of *Straub* to the extent the Fourth District held that the sixty-day period begins upon the issuance of the certificate of title as opposed to the certificate of disbursements.[1]

---

1. We note that during the most recent legislative session, the Legislature passed Committee Substitute for Committee Substitute for House Bill 1361. Among other things, the bill amends sections 45.031 and 45.032, as well as certain

- 2 -

## I. BACKGROUND

Before presenting the facts and procedural history of *Glenville* and then discussing *Straub*, we provide an overview of the general procedures for judicial foreclosure sales.

### Judicial Foreclosure Procedures—Generally

Section 45.031, Florida Statutes (2015)—titled "Judicial sales procedure"—as well as certain other sections of the Florida Statutes, address judicial foreclosure sales and set forth the procedures that "may be followed as an alternative to any other sale procedure if so ordered by the court." § 45.031, Fla. Stat. Under section 45.031, the trial court, "[i]n the order or final judgment," "shall direct the clerk to sell the property at public sale on a specified day." § 45.031(1)(a), Fla. Stat. A notice of sale shall then be published at certain times and shall contain certain information, including "[t]he time and place of sale." § 45.031(2), Fla. Stat. The winning bidder is required to post a deposit "[a]t the time of the sale" and must pay the remaining balance within a prescribed period. § 45.031(3), Fla. Stat. "After a sale of the property," the clerk is required to "promptly file a certificate of sale."

related sections of the Florida Statutes, to revise (lengthen) the time period within which subordinate lienholders and other persons must file a claim to the surplus amount. The bill, which provides for an effective date of July 1, 2019, was signed by Governor Scott on March 21, 2018. *See* ch. 2018-71, Laws of Fla. We do not address this legislation.

§ 45.031(4), Fla. Stat. "If no objections to the sale are filed within 10 days after filing the certificate of sale," the clerk is then required to file a "certificate of title." § 45.031(5), Fla. Stat. Upon the filing of the certificate of title, "the sale shall stand confirmed." § 45.031(6), Fla. Stat. "On filing a certificate of title," the clerk is then required to disburse the proceeds "in accordance with the order or final judgment" and file a "certificate of disbursements." § 45.031(7)(a)-(b), Fla. Stat. "If there are funds remaining after payment of all disbursements required by the final judgment of foreclosure and shown on the certificate of disbursements, the surplus shall be distributed as provided in this section [45.031] and ss. 45.0315-45.035." § 45.031(7)(d), Fla. Stat.

Section 45.031 was amended in 2006 to require that the final judgment of foreclosure, the notice of sale, and the certificate of disbursements include certain language informing subordinate lienholders and other persons claiming a right to any surplus funds that they must file a claim with the clerk of court within "60 days after the sale." *See* ch. 2006-175, § 1, at 2, 3, 5, Laws of Fla. (amending § 45.031(1)(a), (2)(f), (7)(b), Fla. Stat., respectively). Section 45.031 does not define "sale" or "60 days after the sale." But as the cross-references in section 45.031(7)(d) indicate, other sections of chapter 45 also govern surplus funds. Those other sections include section 45.032, which sets forth detailed requirements and procedures relating to the disbursement of surplus funds. As addressed more

fully below, section 45.032 itself prescribes a sixty-day period in the specific context of the filing of claims for surplus funds—a sixty-day period beginning upon the issuance of the certificate of disbursements. *See* § 45.032(3), Fla. Stat.

### *Glenville*—the Case on Review

Respondents, Diane and Mark Glenville, were the defendant property owners in a foreclosure action. *Glenville*, 215 So. 3d at 1285 n.1. Petitioner, The Bank of New York Mellon, f/k/a The Bank of New York, as Successor Trustee to JPMorgan Chase Bank, N.A., as Trustee on behalf of the Certificateholders of the CWHEQ, Inc., CWHEQ Revolving Home Equity Loan Trust, Series 2006-D (Mellon), was the holder of a second mortgage on the property. A first mortgage on the property was held by JP Morgan Chase, and a third mortgage on the property was held by Florida Housing Finance Corporation (Florida Housing).

In May 2014, JP Morgan Chase brought a foreclosure action against the Glenvilles, seeking to foreclose its interest under the first mortgage. A Final Judgment of Foreclosure was entered against the Glenvilles on May 28, 2015. The final judgment set a public auction date of July 2, 2015, and—in accordance with section 45.031(1)(a), Florida Statutes—included the requisite statement regarding a potential surplus. The public auction was held on July 2, 2015. The clerk issued the certificate of sale on July 6, 2015, after the holiday weekend. On July 14, 2015, the clerk issued the certificate of title. And on July 29, 2015, the clerk

issued the certificate of disbursements, which, in accordance with section 45.031(7)(b), Florida Statutes, included the requisite language regarding surplus funds. The certificate of disbursements reflected a surplus of $86,093.27.

On August 4, 2015, Florida Housing filed a claim asserting its right to $20,573.64 of the surplus amount. On September 1, 2015—sixty-one days after the public auction—the Glenvilles filed a Verified Claim for Mortgage Foreclosure Surplus. In their motion, the Glenvilles admitted that Florida Housing's claim was timely and requested that the trial court issue an order disbursing $20,573.64 of the surplus to Florida Housing and the remainder to the Glenvilles. The next day, on September 2, 2015, Mellon filed a claim asserting its right to the entire surplus amount. Mellon's claim was filed more than sixty days after the public auction but within sixty days of the clerk's filing of each of the following: the certificate of sale, the certificate of title, and the certificate of disbursements. No other relevant claims to the surplus were filed.

On November 2, 2015, the trial court held a hearing on the parties' competing claims for the surplus. On November 5, 2015, the trial court issued an Order to Disburse Surplus Funds, directing the clerk to disburse $20,573.64 of the

surplus to Florida Housing, and the balance to the Glenvilles.[2]  The trial court

rejected Mellon's claim as untimely under section 45.031 because it "was not

submitted within 60 days of the foreclosure sale held on July 2, 2015."  Mellon

appealed to the Second District, arguing "that a foreclosure sale is not complete

until the clerk issues the certificate of sale."  *Glenville*, 215 So. 3d at 1285.  Mellon

thus contended that its claim was timely because it was filed within sixty days of

issuance of the certificate of sale.

The Second District rejected Mellon's argument and affirmed the trial

court's order denying Mellon's claim for surplus funds.  *Id.*  The Second District

primarily focused on section 45.031(7)(b) and concluded that the statutory

provision unambiguously provided that the cutoff for submitting claims for surplus

funds is sixty days from the date of the public auction.  *Id.* at 1285-86.  The Second

District observed that section 45.031(7)(b) "only refers to the 'sale,' not the

'certificate of sale,' " and then noted that "section 45.031 assigns particular and

distinct meanings to the terms 'sale' and 'certificate of sale' and does not use them

interchangeably."  *Id.* at 1286.  For example, the Second District noted that section

45.031(4) uses the two terms separately and distinctly in the same sentence.  *Id.*

_____

2. The trial court's order reflects a surplus of $90,564.93, as opposed to the $86,093.27 surplus amount reflected in the certificate of disbursements.  The actual amount of the surplus is not relevant to the legal issue presented in this case.

Thus, according to the Second District, adopting Mellon's argument would not only render section 45.031(4) meaningless but "confuse the meaning of other subsections of the statute." *Id.* The Second District then supported its conclusion by noting that two of its previous decisions used the public auction "as the start date for the sixty-day period." *Id.* (citing *Mathews v. Branch Banking & Tr. Co.*, 139 So. 3d 498, 499-500 (Fla. 2d DCA 2014); *Dever v. Wells Fargo Bank Nat'l Ass'n*, 147 So. 3d 1045, 1047 (Fla. 2d DCA 2014)).

The Second District also rejected a separate argument from Mellon that the sixty-day period should begin from the day the clerk issues the certificate of title. The Second District concluded that Mellon waived that argument by not raising it prior to rehearing. *Id.*[3] Nevertheless, the Second District noted that Mellon's purportedly waived argument was consistent with the Fourth District's recent decision in *Straub*, which held that the sixty-day cutoff period begins when the clerk issues and files the certificate of title. *Id.* at 1287. The Second District then certified conflict with *Straub*, while opining that *Straub*'s construction of the term "sale" "confuses the meaning of several subsections of section 45.031." *Id.* (citing § 45.031(1)(a), (2), (3), (5), and (6), Fla. Stat.).

---

3. The Second District also rejected Mellon's reliance on certain cases that involved "a mortgagor's right of redemption, which is governed by section 45.0315, not section 45.031." *Glenville*, 215 So. 3d at 1287.

- 8 -

In *Straub*, the subordinate lienholders filed their claims to the surplus more than sixty days after the public auction and the filing of the certificate of sale, but not more than sixty days after the clerk's filing of the certificate of title. *Straub*, 182 So. 3d at 880. The trial court determined that the subordinate lienholders' claims were timely. *Id.* at 879. On appeal to the Fourth District, the homeowner argued that the claims were untimely because the sixty-day period in section 45.031 "begins to run when the property is purchased at the auction and the certificate of sale is filed." *Id.* at 880. The Fourth District in *Straub* rejected the homeowner's argument and concluded—without mentioning the certificate of disbursements—that the sixty-day period begins to run upon the issuance and filing of the certificate of title. *Id.* at 881. *Straub* began by noting that the case presented "an issue of first impression under today's version of section 45.031." *Id.* at 880. *Straub* then looked to *Allstate Mortgage Corp. of Florida v. Strasser*, 286 So. 2d 201 (Fla. 1973), in which this Court interpreted a previous version of section 45.031. *Straub*, 182 So. 3d at 880-81.

In *Strasser*, this Court interpreted the meaning of the term "sale" in section 45.031(1), Florida Statutes (1971), but in the context of the right of redemption. *Strasser*, 286 So. 2d at 201. The statutory language at issue was added in 1971 and provided as follows: "In cases when a person has an equity of redemption, the

court shall not specify a time for the redemption, but the *person may redeem the property at any time before the sale*." *Id.* at 202 (quoting § 45.031(1), Fla. Stat. (1971)). After a default judgment was entered against the property owner in an action to foreclose a mechanic's lien, the property was sold at public auction. *Id.* at 201-02. The clerk issued a certificate of sale the day after the auction. *Id.* at 202. Several days later, before the certificate of title was issued, the circuit court ordered the clerk to accept the property owner's payment in redemption. *Id.* at 202, 203. The corporation that purchased the property at public auction appealed the trial court's order. *Id.* at 202. On appeal, the Third District Court of Appeal affirmed the trial court, concluding that the Legislature intended the term "sale" to refer to the actual transfer of ownership that takes place upon the issuance of the certificate of title. *Id.* at 202-03. The Third District first noted that the 1971 statutory amendment was in derogation of the common law right to redeem property up until the entry of an order confirming the sale and thus must be strictly construed. *Id.* at 202. The Third District then noted that the Legislature neither defined the term "sale" nor indicated its intended meaning, so the Third District looked to various definitions before concluding that the Legislature intended the term "sale" to refer to the actual transfer of ownership. *Id.* at 202-03. And the Third District observed that, under section 45.031(3), Florida Statutes (1971), the transfer of ownership takes place upon the issuance of the certificate of title. *Id.* at

203. On review, this Court affirmed the decision of the Third District by quoting the Third District's analysis and then concluding that the district court "correctly interpreted" section 45.031(1), Florida Statutes (1971). *Id.*

After reviewing *Strasser*, the Fourth District in *Straub* concluded that *Strasser*'s reasoning should control the interpretation of the term "sale" in "today's version of [section 45.031]"—that is, the transfer of ownership completed upon filing of the certificate of title. *Straub*, 182 So. 3d at 881. *Straub* recognized that the Legislature had partially superseded *Strasser* in 1993 by enacting section 45.0315, which codified the right of redemption and provided that the property could be redeemed at "any time before the later of the filing of a certificate of sale by the clerk of the court or the time specified in the judgment, order, or decree of foreclosure." *Id.* (quoting § 45.0315, Fla. Stat. (2014)). But *Straub* concluded that the Legislature merely "created a specific window for exercising the right of redemption" and that nothing in the enactment of section 45.0315 suggested that the Legislature "intended to change the plain meaning of the word 'sale' used elsewhere in the statute." *Id.*

## II. ANALYSIS

The certified conflict issue presented in this case requires us to construe the term "60 days after the sale," as used in section 45.031, Florida Statutes (2015). This issue is one of statutory interpretation, which is a pure question of law that

- 11 -

this Court reviews de novo. *See Borden v. E.-European Ins. Co.*, 921 So. 2d 587, 591 (Fla. 2006).

In 2006, in an apparent response to the growing number of foreclosure sales that were resulting in surplus amounts, the Legislature amended chapter 45, Florida Statutes, by enacting "[a]n act relating to foreclosure proceedings." Ch. 2006-175, Laws of Fla. (title). As indicated above, the 2006 act amended section 45.031 to require that certain statements regarding potential surplus amounts be included in the final judgment of foreclosure, the notice of sale, and the certificate of disbursements. *See* ch. 2006-175, § 1, at 1-6, Laws of Fla. The 2006 act also created several new statutory sections within chapter 45 to specifically address foreclosure surplus funds. And the 2006 act amended existing section 45.031(7) to add paragraph (d) to directly cross-reference those new statutory sections. *See* ch. 2006-175, § 1, at 6, Laws of Fla. Namely, section 45.031(7)(d), Florida Statutes (2015), provides that "[i]f there are funds remaining after payment of all disbursements required by the final judgment of foreclosure and shown on the certificate of disbursements, the surplus shall be distributed as provided in this

section [45.031] and ss. 45.0315-45.035."[4]  The newly created statutory sections include section 45.032, titled "Disbursement of surplus funds after judicial sale."

Because we find section 45.032—and in particular subsection 45.032(3)—to be dispositive of the conflict issue, we begin by examining the relevant provisions of section 45.032.  We then explain why section 45.032(3) requires the conclusion that the sixty-day period in section 45.031(7)(b)—and elsewhere in section 45.031—begins to run upon the issuance of the certificate of disbursements.

### Section 45.032

As an initial matter, section 45.032(1) defines certain terms that apply not just for purposes of section 45.032 but "[f]or purposes of ss. 45.031-45.035." Section 45.032(1)(c) specifically defines the term "surplus" to mean "the funds remaining *after payment of all disbursements* required by the final judgment of foreclosure and *shown on the certificate of disbursements*."  (Emphasis added.)

Among other things, section 45.032(2) then "establishe[s] a rebuttable legal presumption that the owner of record on the date of the filing of a lis pendens is the person entitled to surplus funds *after payment of subordinate lienholders who have timely filed a claim*."  (Emphasis added.)

---

4.  Section 45.0315, which addresses the right of redemption, is the only cross-referenced section that was in existence before the effective date of the 2006 act.

Section 45.032(3) then references a very specific sixty-day period: "*During the 60 days after the clerk issues a certificate of disbursements*, the clerk shall hold the surplus pending a court order." (Emphasis added.) Each of the three paragraphs in subsection (3) go on to reference this sixty-day period in the specific context of the filing of claims for surplus funds. Paragraph (a) provides, in part, as follows: "*If the owner of record claims the surplus during the 60-day period and there is no subordinate lienholder*, the court shall order the clerk to deduct any applicable service charges from the surplus and pay the remainder to the owner of record." § 45.032(3)(a), Fla. Stat. (emphasis added). Paragraph (b) then provides, in part, as follows:

> *If any person other than the owner of record claims an interest in the proceeds during the 60-day period* or if the owner of record files a claim for the surplus but acknowledges that one or more other persons may be entitled to part or all of the surplus, *the court shall set an evidentiary hearing to determine entitlement to the surplus*.

§ 45.032(3)(b), Fla. Stat. (emphasis added). Finally, paragraph (c) provides, in part, that "[*i*]*f no claim is filed during the 60-day period*, the clerk shall appoint a surplus trustee from a list of qualified surplus trustees as authorized in s. 45.034." § 45.032(3)(c), Fla. Stat. (emphasis added).[5]

---

5. "Surplus trustees" are third-party trustees who must be approved by the Department of Financial Services and whose primary duty "is to locate the owner of record within 1 year after appointment." *See* § 45.034(1), (6), Fla. Stat.

Lastly, the Legislature made clear that disputes over surplus funds have no bearing on the validity of the foreclosure sale itself and "do not in any manner affect or cloud the title of the purchaser at the foreclosure sale of the property." § 45.032(5), Fla. Stat.

## Statutory Interpretation

In concluding that the sixty-day period referenced in section 45.031 is triggered by the public auction, the Second District in *Glenville* did not take into account the specific sixty-day period identified in section 45.032(3). Instead, the Second District focused largely on what it considered to be a clear meaning of section 45.031(7)(b) that avoided confusing the meaning of other subsections of section 45.031. *Glenville*, 215 So. 3d at 1286-87. Similarly, the Glenvilles point to numerous instances in section 45.031 in which the term "sale" refers to the public auction, and they appear to urge this Court to follow the principle that presumes "that when the legislature uses the same term multiple times in the same statute, that term carries the same meaning each time it is used." *Nat'l Auto Serv. Centers, Inc. v. F/R 550, LLC*, 192 So. 3d 498, 507 (Fla. 2d DCA 2016) (citing *Rollins v. Pizzarelli*, 761 So. 2d 294, 298 (Fla. 2000)). On the other hand, Mellon's various arguments can be summed up as follows: in no event should the sixty-day period begin before the issuance of the certificate of sale.

- 15 -

We agree with Mellon that the sixty-day period is not triggered by the public auction. In doing so, we conclude that the sixty-day period in section 45.031(7)(b) must be understood in a way that is consistent with the sixty-day period in section 45.032(3). Ultimately, there cannot be two different sixty-day cutoff periods for filing claims for surplus funds.

As with any matter involving an issue of statutory interpretation, courts must first look to the actual language of the statute and "examine the statute's plain meaning." *Lopez v. Hall*, 233 So. 3d 451, 453 (Fla. 2018). "When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." *A.R. Douglass, Inc., v. McRainey*, 137 So. 157, 159 (Fla. 1931). Here, the Second District concluded that the meaning of the term "sale" as used in section 45.031(7)(b) clearly and unambiguously referred to the public auction, given the Legislature's use of the same term in "*other subsections of the statute.*" *Glenville*, 215 So. 3d at 1286 (emphasis added). But the Second District stopped short in its consideration of relevant provisions of the statutory scheme for judicial sales. This Court has long recognized that the "plain language" approach

> is subject to the qualification that if a part of a statute appears to have a clear meaning if considered alone but when given that meaning is inconsistent with other parts of the same statute or others in pari

- 16 -

materia, the Court will examine the entire act and those in pari materia in order to ascertain the overall legislative intent.

When construing a particular part of a statute it is only when the language being construed in and of itself is of doubtful meaning or doubt as to its meaning is engendered by apparent inconsistency with other parts of the same or a closely related statute that any matter extrinsic the statute may be considered by the Court in arriving at the meaning of the language employed by the Legislature.

*Fla. State Racing Comm'n v. McLaughlin*, 102 So. 2d 574, 575-76 (Fla. 1958) (emphasis omitted) (quoting lower court's order).

Section 45.032 is "closely related" to section 45.031. *Id.* at 576. The two sections are manifestly designed to work in tandem. Not only was section 45.032 created in the same legislation in 2006 that added the statutory language at issue to section 45.031, but that legislation also amended section 45.031 to create two separate cross-references to section 45.032 and other related sections of chapter 45, including a cross-reference in the specific context of foreclosure surpluses. *See* § 45.031(7)(d), Fla. Stat. The two statutory provisions are without doubt part of the same statutory scheme—that is, they are *in pari materia*, "in the same matter."

So looking to section 45.032 to understand the meaning of section 45.031 is proper because section 45.031, section 45.032, and several other sections of chapter 45 together comprise a statutory scheme relating to judicial foreclosure sale procedures. *See Sch. Bd. of Palm Beach Cty. v. Survivors Charter Sch., Inc.*, 3 So. 3d 1220, 1234 (Fla. 2009) ("[B]ecause we are dealing with an entire statutory scheme for granting and terminating charters, we do not look at only one portion of

- 17 -

the statute in isolation but we review the entire statute to determine intent.").  In the end, looking to section 45.032 "is in accord with the principle that we 'give full effect to all statutory provisions and construe related statutory provisions in harmony with one another.' "  *Id.* (quoting *Heart of Adoptions, Inc. v. J.A.*, 963 So. 2d 189, 199 (Fla. 2007)).  A harmonization of section 45.031 and section 45.032 leads to the conclusion that the sixty-day period for the filing of claims to surplus funds begins upon the issuance of the certificate of disbursements—that is, after the sale has been confirmed through the issuance of the certificate of title, and after the actual surplus amount has been determined.  *See* §§ 45.031(6), 45.032(1)(c), Fla. Stat.  We thus disagree with *Glenville*'s conclusion that the only reasonable interpretation of "60 days after the sale" as used in section 45.031 is that it means sixty days from the public auction.

Our case law has already recognized that the term "sale" in chapter 45 must be understood in light of the specific context in which it is used.  In *Strasser* we examined a previous version of section 45.031 and concluded that the undefined term "sale" in the specific context there referred to the transfer of ownership occurring upon the filing of the certificate of title.  *See Strasser*, 286 So. 2d at 202-03.  The point established in *Strasser* is underlined by the fact that the term "sale" is undefined not just in section 45.031 but in all of chapter 45, and there are other related instances in chapter 45 in which the term cannot be understood to mean the

public auction itself. For example, section 45.0315, which addresses the right of redemption, provides that certain persons "may cure the mortgagor's indebtedness and *prevent a foreclosure sale*" "[a]t any time *before the later of* the filing of a certificate of sale by the clerk of the court or the time specified in the judgment, order, or decree of foreclosure." (Emphasis added.) In other words, a "sale" can still be "prevent[ed]" even after the public auction.

Interpretation of the sixty-day provision of section 45.031(7)(b) in light of the sixty-day provision of section 45.032(3) is also supported by the rule that "a specific statute covering a particular subject area always controls over a statute covering the same and other subjects in more general terms." *McKendry v. State*, 641 So. 2d 45, 46 (Fla. 1994). Section 45.031 is clearly the more general statute. Section 45.031 is generally titled "Judicial sales procedure" and covers far more than foreclosure surpluses. Section 45.032, on the other hand, is specifically titled "Disbursement of surplus funds after judicial sale" and solely addresses foreclosure surpluses. Indeed, the very definition of the term "surplus" is found in section 45.032. Under this Court's longstanding approach to statutory interpretation, section 45.032(3) controls the relevant sixty-day period.

Our reasoning regarding the conflict issue also requires that we disapprove the reasoning of *Straub*. *Straub* correctly determined that the sixty-day cutoff period does not begin until after the actual transfer of ownership of the property,

- 19 -

but *Straub* erroneously concluded that the sixty-day period begins upon the issuance of the certificate of title. Although the Legislature may have contemplated that the certificate of disbursements would be issued on the same day as the certificate of title, *see* § 45.031(7)(a), Fla. Stat. (requiring the clerk to file the certificate of disbursements "[o]n filing a certificate of title"), that will not always be the case, as *Glenville* demonstrates. And section 45.032(3) provides that the actual triggering event is the issuance of the certificate of disbursements.

## III.  CONCLUSION

We conclude that "60 days after the sale," as used in chapter 45 in the context of claims to surplus funds, means sixty days after the clerk issues the certificate of disbursements. Mellon's claim to the surplus was timely filed before the expiration of that sixty-day period. Accordingly, we quash the Second District's decision in *Glenville*. And we disapprove the reasoning of *Straub*, which is inconsistent with our reasoning here.

It is so ordered.

PARIENTE, QUINCE, POLSTON, LABARGA, and LAWSON, JJ., concur.
LEWIS, J., concurs in result.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal – Certified Direct Conflict of Decisions

Second District - Case No. 2D15-5198

(Manatee County)

Anthony R. Smith, Kathryn I. Kasper, and Kendra J. Taylor of Sirote & Permutt, P.C., Winter Park, Florida,

for Petitioner

Sheryl A. Edwards of The Edwards Law Firm, PL, Sarasota, Florida,

for Respondents